**Irma H. SADLER, Executrix of the Estate of Johnnie Dewey Hodges, Jr., Deceased, Plaintiff,**

v.

**NEW HANOVER MEMORIAL HOSPITAL, INC., a corporation, Defendant.**

**No. 77–0017–CIV–7.**

United States District Court, E. D. North Carolina, Wilmington Division.

May 31, 1977.

Lionel L. Yow, of the firm of Yow & Yow, John F. Crossley, of the firm of Crossley & Johnson, Wilmington, N.C., for plaintiff.

A. Dumay Gorham, Jr., of the firm of Marshall, Williams, Gorham & Browley, Wilmington, N.C., for defendant.

MEMORANDUM OPINION and ORDER

LARKINS, Chief Judge:

In this civil action, the plaintiff executrix, a citizen of the State of Virginia, seeks to recover in accord with the North Carolina Wrongful Death Statute, N.C.G.S. § 28A–18–2, compensatory damages totaling 1.5 million dollars for the alleged wrongful death of her testator. In response to the complaint, the defendant hospital has interposed two motions: a motion to dismiss this action for want of diversity of citizenship filed pursuant to Rule 12(b)(1), F.R.Civ.P. and a motion to stay

this federal action pending the termination of an identical wrongful death action now being pursued by the plaintiff in the North Carolina courts. Since the parties have carefully briefed the diversity issue and a hearing at this juncture would not assist in weighing the merits of the diversity motion, the 12(b)(1) motion is ripe for disposition at this time. For reasons stated later in this memorandum opinion, the court will not consider the defendant's motion to stay this action at this time.

### DIVERSITY OF CITIZENSHIP ISSUE

The plaintiff, acting in her capacity as executrix of the decedent's estate, bottoms the jurisdiction of this wrongful death proceeding on 28 U.S.C. § 1332. As construed by the Supreme Court in *Strawbridge v. Curtiss*, 3 Cranch (7 U.S.) 267, 2 L.Ed. 435 (1806), § 1332 requires complete diversity of citizenship among the parties to a lawsuit filed under this statute. The question posed by the defendant's motion is whether the domicile (the state of citizenship) of the executrix or the beneficiaries will control the diversity of citizenship determination.

The complaint relates the "diversity facts" as follows. At the time the decedent died, he maintained his domicile in the State of North Carolina. The decedent's two minor sons, apparently the only takers under the will, are citizens of North Carolina. As noted above, Virginia serves as domicile for the plaintiff. The defendant is a North Carolina corporation and maintains its principal place of business in this state.

As expected the parties assume opposing positions with respect to the merits of the diversity question. The defendant contends that the citizenship of the takers under the will, North Carolina citizens, should control. In support of this position, the defendant cites several authorities, in particular *Miller v. Perry*, 456 F.2d 63 (4 Cir. 1972) and *Vaughan v. Southern Ry. Co.*, 542 F.2d 641 (4 Cir. 1976). If the court accepts this argument, the requisite diversity will not exist. On the other hand, the plaintiff contends that complete diversity does exist in that the citizenship of the executrix, Vir-

ginia, is the basis for resolving this question. The plaintiff relies on *Mecom v. Fitzsimmons Drilling Co.*, 284 U.S. 183, 52 S.Ct. 84, 76 L.Ed. 233 (1931), and other citations to substantiate this position. To assist in the determination of this issue, the court will examine these decisions and others below.

In the benchmark decision of *Mecom v. Fitzsimmons Drilling Co., supra,* the United States Supreme Court established at that time the uniformly followed rule that the domicile of the personal representative controlled the diversity determination. In *Mecom*, where the plaintiff qualified as administrator of the estate, the Court in resolving the diversity problem held that:

> Where an administrator is required to bring the suit under a statute giving a right to recover for death by wrongful act, and is * * * charged with the responsibility for the conduct or settlement of such suit and the distribution of its proceeds to the persons entitled under the statute, and is liable upon his official bond for failure to act with diligence and fidelity, he is the real party in interest, and his citizenship, rather than that of the beneficiaries is determinative of federal jurisdiction. 284 U.S. at 186, 52 S.Ct. at 86.

This rationale had been applied before *Mecom* to executors suing to recover "debts" of the estate. *Childress v. Emory*, 8 Wheat. (21 U.S.) 642, 5 L.Ed. 705 (1823). Furthermore, the United States Court of Appeals for the Fourth Circuit followed the *Mecom* rule in *Grady v. Irvine*, 254 F.2d 224 (4 Cir. 1968).

*Miller v. Perry, supra,* provided a specific fact situation which the Fourth Circuit seized upon as the means to avoid the potentially harsh effects of *Mecom*. That case involved a wrongful death action filed pursuant to 28 U.S.C. § 1332 by a resident ancillary administrator against a North Carolina citizen. N.C.G.S. § 2–28, in effect at that time but now repealed, barred a "nonresident of North Carolina" from qualifying as an administrator of property or claims in this state. In compliance with

N.C.G.S. § 28–8, a citizen of North Carolina qualified and received the letters of administration and as mandated by Rule 17(a) (real party in interest provisions), the complaint named this resident ancillary administrator as the plaintiff in the suit. The federal district court viewed the wrongful death action as a North Carolina citizen (the ancillary administrator) suing another North Carolina citizen (the defendant) and dismissed the action for want of diversity.

On appeal, the Fourth Circuit disagreed with the dismissal and explained its holding as follows:

> We conclude, therefore, that when, as here *a resident ancillary administrator is required to present the interests of noncitizen beneficiaries by virtue of the laws of the state in which the claim arose,* and his duties are as limited as those imposed upon him by North Carolina, the citizenship of the beneficiaries is controlling for diversity purposes. *Id.* at 67. (Emphasis supplied)

Thus *Miller* engrafted an exception on the *Mecom* rule that the personal representative's domicile controls diversity.

In a recent decision which borrowed the *Miller* rationale, the Fourth Circuit affirmed the dismissal of a wrongful death action for lack of diversity. *Vaughan v. Southern Ry. Co., supra.* There a Virginia citizen was killed by the alleged negligence of a Virginia corporation which maintained its principal place of business in that state. The accident occurred in North Carolina. The decedent's sole beneficiary, a Virginia citizen who qualified as domiciliary administrator, chose to bring the wrongful death action in North Carolina. In accordance with the provisions of old N.C.G.S. § 28–8, a North Carolina citizen was appointed to serve as ancillary administrator and named as the plaintiff in the wrongful death action.

When faced with this situation, the circuit court used the *Miller* rationale and pierced behind the citizenship of the North Carolina administrator to the Virginia heir. In reaching this result, the court relied on the spirit of 28 U.S.C. § 1359 [1]. The court explained its thinking as follows:

> Section 1359 at least expresses a greater congressional concern about artificial creation of diversity jurisdiction than about its artificial defeat. Hence, we conclude here, as in *Miller,* that we should look to the citizenship of the beneficiary in Virginia rather than that of the North Carolina administrator appointed to comply with North Carolina's procedural requirement. 542 F.2d at 644.

This analysis reveals that the Fourth Circuit in *Miller* used the citizenship of the beneficiaries to create diversity jurisdiction and in *Vaughan,* the citizenship of the beneficiary was employed to destroy citizenship.

There is one further decision which sheds light on the proper application of the two lines of authority to the case at bar. In *Harper v. Bowen,* No. 76–0023–CIV–6 (E.D.N.C. January 26, 1977) (unpublished), a North Carolina citizen, the plaintiff in the federal wrongful death action, qualified to administer the estate of a North Carolina decedent. The defendant in the action was also a citizen of North Carolina. The North Carolina intestacy statute identified two New York citizens as the only heirs-at-law. The plaintiff argued that in view of *Miller* and *Vaughan,* the court should resolve the diversity issue by considering the citizenship of the two New York heirs.

Despite the inherent ingenuity of this argument, this Court refused to extend the *Miller-Vaughan* logic to the facts in *Harper* of a North Carolina citizen suing in the capacity of administrator a defendant who maintains his domicile in North Carolina. This conclusion hinged on the Fourth Circuit's reliance in *Miller* and *Vaughan* on the North Carolina statute requiring the appointment of a North Carolina citizen ancil-

1. 28 U.S.C. § 1359 provides that, "A district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court". The Fourth Circuit in *Vaughan* referred in "loose language" to § 1359 as a basis for using the citizenship of the heirs to defeat diversity.

lary administrator. Since an ancillary administrator was not before the court in *Harper*, this court could not justify the use of the beneficiary's citizenship to create jurisdiction. Thus in *Harper*, this Court did not bypass the administrator and use the beneficiary as the party for deciding the diversity issue.

As in *Harper*, the instant case does not involve N.C.G.S. § 28–8, the now repealed ancillary administrator statute. This is a significant distinction which suggests that the court should again follow *Mecom* and not the *Miller-Vaughan* line.

Another distinction relates to the plaintiff's title in this suit; she qualified under North Carolina law as executrix, (i.e.) she was nominated by the decedent in his will to serve as the personal representative of his estate. The executrix was selected not after the decedent's death, but before death, before the beneficiaries could contemplate a wrongful death action. This distinction underscores a concern expressed by the court in *Vaughan*. There the court discussed § 1359 and the selection of an administrator solely as a means to create federal diversity jurisdiction.

If the court ruled that the citizenship of the two minor sons controlled, this Court might in effect circumvent the right of a testator, via his executor, to utilize the federal diversity jurisdiction granted by Congress. The Fourth Circuit attacked the restriction placed on the diversity jurisdiction by old N.C.G.S. § 28–8 when the court stated in *Miller*:

> The result is that access to a district court in North Carolina is denied to a wrongful death claimant whose intestate died of injuries sustained in that state, if the decedent was a citizen of another state, while preserving access to federal courts if the decedent was a North Carolinian and the defendant a noncitizen. 456 F.2d at 64.

This Court is hesitant to expand *Miller* and *Vaughan* and use the citizenship of the beneficiaries to defeat federal jurisdiction when the decedent has selected by will an out of state executor or executrix.

In addition, there is some question in the Fourth Circuit as to whether the holding of *Mecom* is now "deadwood". In *Vaughan*, the Fourth Circuit opined in a two to one decision that "*Mecom* has been so eroded by *Kramer v. Carribean Mills*[2] that it could no longer be regarded as a rule of universality." 542 F.2d at 644. It would seem that the Supreme Court should be given an opportunity to determine what vestiges of *Mecom* have survived. Until the United States Supreme Court has examined this question, or Congress stepped in, this Court will continue to limit *Miller* and *Vaughan* to their respective facts.

For these reasons, this Court will follow *Mecom* in disposing of the 12(b)(1) motion. In light of *Mecom*, the court finds that using the Virginia citizenship of the executrix, the requisite diversity does exist.[3] The motion to dismiss the complaint for lack of diversity will be denied.

## MOTION TO STAY FEDERAL ACTION

Concomitant with the motion seeking a dismissal of the action, the defendant has submitted a motion seeking a stay of this action pending the resolution of an identical state action filed by the plaintiff. In response to this motion, the plaintiff explains that the state court action was filed solely to prevent the running of the statute of limitations, as occurred in *Vaughan*, in case this Court ruled that the complaint failed to allege the requisite subject matter jurisdiction. The plaintiff's response indicates that the plaintiff will seek a voluntary dismissal

2. 394 U.S. 823, 89 S.Ct. 1487, 23 L.Ed.2d 9 (1969). The court ruled there that the assignment of a debt to create diversity jurisdiction was collusive within the meaning of 28 U.S.C. § 1359. The action was dismissed on this ground.

3. The court reaches this conclusion cognizant of the North Carolina statute which provides that the amount recovered from a wrongful death action is not treated as an asset of the estate and that any recovery will be distributed pursuant to the intestacy scheme. See N.C. G.S. §§ 28A–22–1 and 28A–18–2.

of the state action if this Court has subject matter jurisdiction. In light of this suggestion, the court will hold the motion to stay in abeyance pending further action in this regard by the plaintiff.

NOW THEREFORE, in accordance with the foregoing, it is

ORDERED that the defendant's motion to dismiss this action for want of diversity submitted pursuant to Rule 12(b)(1), F.R. Civ.P. be, and the same is hereby DENIED.