Charles J. VAUGHAN, Ancillary Administrator of the Estate of Eldon Eure Swain, Appellant,

v.

SOUTHERN RAILWAY COMPANY, Appellee.

No. 75–2107.

United States Court of Appeals, Fourth Circuit.

Argued April 1, 1976.

Decided Oct. 7, 1976.

Morton Whitlow, Portsmouth, Va. (Richard S. Young, Mattox, Sondej & Young, Portsmouth, Va., Charles J. Vaughan, Turner & Vaughan, Woodland, N.C., on brief), for appellant.

J. Kenyon Wilson, Elizabeth City, N.C. (Philip P. Godwin, Gateville, N.C., and W. T. Joyner, Jr., Raleigh, N.C., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and WINTER and BUTZNER, Circuit Judges.

HAYNSWORTH, Chief Judge:

In 1969 this court was presented with the first of a series of cases dealing with the appointment of a fiduciary to create or defeat diversity jurisdiction. *Lester v. McFaddon,* 4th Cir., 415 F.2d 1101 held that the appointment of a Georgia resident as administrator of the estate of a South Carolina decedent for the purpose of bringing a wrongful death action in the federal courts against a South Carolina defendant was an "improper manufacture of jurisdiction." Id. at 1104. Subsequent cases reaffirmed and expanded the *Lester* notion that the citizenship of the personal representative is not an inflexible determinant of diversity of citizenship. *Miller v. Perry,* 4th Cir., 456 F.2d 63; *Bishop v. Hendricks,* 4th Cir., 495 F.2d 289. *See generally,* 6 *Wright and Miller, Federal Practice and Procedure* § 1557 (1971). Now, a related question has arisen in a new context.

In 1972, Eldon Swain, a resident of Portsmouth, Virginia, was killed in North Carolina when, seated between the rails, he was hit by a Southern Railway train. Southern is incorporated in Virginia and has its principal place of business in the District of Columbia. The decedent's mother, Marie Swain, who was also a citizen of Virginia, qualified as administratrix of the Swain estate for the purpose of bringing suit against Southern Railway for wrongful death. There were no assets in the Swain estate other than the wrongful death claim.

According to the plaintiff, it was determined that the most convenient place for trial would be the State of North Carolina. The action would be governed by North Carolina law since the accident occurred there, and all of the potential witnesses resided in North Carolina. Since North

Carolina law requires that a resident ancillary administrator be appointed to bring such an action,[1] the plaintiff, Vaughan, a North Carolina attorney, was appointed ancillary administrator of the Swain estate. Vaughan brought the wrongful death action in the United States District Court for the Eastern District of North Carolina. Nominally, the action is between parties who are of diverse citizenship, a situation which would not have existed had the action been filed by Marie Swain, the mother and beneficiary.

The defendant filed a motion to dismiss on the ground that Vaughan had not properly qualified as administrator. The district court, relying on *Lester* and *Miller,* ruled that whether Vaughan had properly qualified, the case should be dismissed because Vaughan's appointment was made for the purpose of transferring an essentially local controversy into the federal courts. For the reasons stated below, we agree that dismissal was proper.

In *Lester,* we relied upon *Kramer v. Caribbean Mills,* 394 U.S. 823, 89 S.Ct. 1487, 23 L.Ed.2d 9 and *McSparran v. Weist,* 3d Cir., 402 F.2d 867 to conclude that a federal court may ignore the citizenship of a personal representative and look to that of the beneficiaries he represents if it is determined that the joinder of the personal representative was improper or collusive to invoke the court's jurisdiction within the meaning of 28 U.S.C.A. § 1359.[2] We focused on the fact that there were no other assets in the estate and concluded that as was true of the assignee in *Kramer,* the foreign administrator had done little more than lend the use of his name and could best be termed a "straw party." 415 F.2d at 1103–04.

*Miller* presented the converse of *Lester.* In *Miller,* a Florida resident was killed in North Carolina and his administrator, also a citizen of Florida, sought to bring a wrongful death action in the federal courts of North Carolina. He was thwarted in his efforts, however, by the same North Carolina rule involved in this case, the requirement that a North Carolina administrator be appointed to bring an action for wrongful death in that state. Accordingly, a North Carolina administrator was appointed, and the district court subsequently dismissed the action because the defendant was also a North Carolinian.

On appeal, we reversed the district court and held that the citizenship of a resident administrator reluctantly procured by out-of-state beneficiaries for the sole purpose of complying with a state procedural requirement should not be looked to when to do so would defeat diversity jurisdiction. In so holding, we implicitly decided that the rule announced by the Supreme Court in *Mecom v. Fitzsimmons Drilling Co.,* 284 U.S. 183, 52 S.Ct. 84, 76 L.Ed. 233 (1931) is not "inflexible and constitutionally mandated." 456 F.2d at 64.

The final case in the Fourth Circuit trilogy, *Bishop v. Hendricks,* was a *Lester* situation. This court, noting that *Miller* had signaled "a substantial change in diversity jurisdiction," held that the appointment of the foreign administrator was improper or collusive under § 1359. We declared that, motive notwithstanding, the proper test for determining whether an administrator's appointment falls within § 1359 was whether the administrator has "something more than a nominal interest at stake in the litigation." 495 F.2d at 297.

Applying the above principles, we must conclude that Vaughan's citizenship should be disregarded in determining whether diversity of citizenship exists. Since the beneficiaries of the wrongful death claim are

---

1. N.C.Gen.Stat. § 28–173 requires that actions for wrongful death be prosecuted in the name of the personal representative. N.C.Gen.Stat. § 28–8 provides that letters of administration shall not be issued to a person who is a nonresident of the State of North Carolina.

2. Section 1359 provides that "[a] district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court."

all citizens of Virginia, which is also the state of incorporation of the defendant, there is no diversity in this case and the district court was correct in dismissing it for lack of jurisdiction.

The plaintiff earnestly contends that *Mecom* is dispositive of the present question because it sets forth the "inflexibl[e] criteri[a] for ultimate determination of diversity." *Mecom,* however, dealt with a case in which the administrator had been selected because his citizenship was not diverse. The effort was not collusively to create federal jurisdiction, but to defeat it. Section 1359 had no relevance in *Mecom,* as it does here. Here, we cannot say as easily as we did in *Lester* and *Bishop* that the appointment of the administrator was collusive and procured solely for the purpose of creating federal diversity jurisdiction, for there was good reason to bring the action in North Carolina, and the North Carolina statutes require that it be brought in the name of a North Carolina administrator. As in *Miller v. Perry,* if Mrs. Swain was going to bring the action in North Carolina, she was compelled to procure the appointment of a North Carolina administrator. Those circumstances make the purity of her motive beyond question, but she attempts, by the appointment of the North Carolina administrator, to convert this controversy between citizens of Virginia into one between citizens of different states. In *Lester* we recognize that a finding that an apparent diversity of citizenship was pretensive was not dependent upon evil or reprehensible conduct or motive, but flowed from the fact that the chosen administrator had no stake in the controversy and was selected for the purpose of creating apparent diversity of citizenship. Here, Vaughan has no stake in the outcome of the controversy; given the decision to file the action in North Carolina, his appointment was not solely for the purpose of creating diversity of citizenship, but the attempt to put it to that use may be regarded as a substantial equivalent. With no stake in the outcome of the controversy, substantive diversity of

citizenship is as artificial and shadowy as it was in *Lester* and in *Bishop.* In that sense, it is pretense, not reality. Indeed, in *Bishop* we said that the administrator's lack of a stake in the controversy was enough to make his citizenship irrelevant.

Moreover, in *Miller v. Perry,* where we were unaided by § 1359 for the plaintiff there sought to invoke federal jurisdiction, not to defeat it, we concluded that *Mecom* had been so eroded by *Kramer v. Caribbean Mills* that it could no longer be regarded as a rule of universality. We felt free to look to the substantive relations of the parties and concluded that, in determining the existence of diversity of citizenship, on the plaintiff's side we should look to the citizenship of the beneficiaries and not to the citizenship of the representative. Section 1359 at least expresses a greater congressional concern about artificial creation of diversity jurisdiction than about its artificial defeat. Hence, we conclude here, as in *Miller,* that we should look to the citizenship of the beneficiary in Virginia rather than that of the North Carolina administrator appointed to comply with North Carolina's procedural requirement.

As we observed in *Lester,* North Carolina's decree appointing Vaughan as administrator "is not under attack. The appointment may be assumed to be valid in every respect and the administrator perfectly free to pursue the action in the state court."[3] The plaintiff could have proceeded in a state court with no difficulty. The action foundered because of the attempt to convert an intra-state controversy into an inter-state controversy.

We are informed that the statute of limitations has run and that an affirmance of the district court's order will mean that the wrongful death claim will never be brought to trial. In an attempt to avoid such hardship, we held in *Lester* that its rule would be applied prospectively only. This action, however, was filed much later. Now not only *Kramer v. Caribbean Mills, Lester* and *Miller v. Perry,* but *Bishop* as well, point

---

**3.** 415 F.2d at 1105.

the way to denial of federal jurisdiction in this case.[4]

For these reasons, dismissal of the complaint is affirmed.

*AFFIRMED.*

BUTZNER, Circuit Judge (dissenting):

This case presents the first instance in which a court has utilized the residence of a beneficiary of a wrongful death claim to deny diversity jurisdiction when the residence of the decedent's local personal representative, whose appointment is required by state law, would otherwise sustain jurisdiction. I dissent because I think the court's decision, though motivated by a laudable desire for symmetry and reform, is based on a concept of what the law should be rather than what it actually is. Since the decision is supported by neither statute nor precedent, I believe that it is contrary to generally accepted principles governing the jurisdiction of district courts. At the very least, this drastic innovation should be tempered by prospective application.

I start with the unquestioned proposition that a federal court must defer to a state law requiring the appointment of a resident or local fiduciary to institute an action for wrongful death. The North Carolina fiduciary was an indispensable plaintiff. The sole issue, therefore, is which residence, the fiduciary's or the beneficiary's, is to be considered in determining diversity jurisdiction. This, of course, must be decided by federal law.

As long ago as 1823, Mr. Justice Story wrote in *Childress v. Emory,* 21 U.S. (8 Wheat.) 642, 668–669, 5 L.Ed. 705 (1823) that the citizenship of the executor of a decedent's estate determines diversity jurisdiction. This rule was reaffirmed and applied to suits for wrongful death in *Mecom v. Fitzsimmons Drilling Co.,* 284 U.S. 183, 186, 52 S.Ct. 84, 86, 76 L.Ed. 233 (1931) where the Court said:

> "The petitioner insists that where an administrator is required to bring the suit under a statute giving a right to recover for death by wrongful act, and is, as here, charged with the responsibility for the conduct or settlement of such suit and the distribution of its proceeds to the persons entitled under the statute, and is liable upon his official bond for failure to act with diligence and fidelity, he is the real party in interest and his citizenship, rather than that of the beneficiaries, is determinative of federal jurisdiction. This we think is the correct view."

This rule of diversity jurisdiction has never been repudiated by the Supreme Court. *See* 6 Wright and Miller, Federal Practice and Procedure, §§ 1548 and 1556. It is, however, subject to two well-defined exceptions.

The first exception is codified in 28 U.S.C. § 1359.[1] The purpose of this statute is to prohibit a party from "improperly or collusively" invoking diversity jurisdiction. Manifestly, the fiduciary's citizenship should not confer jurisdiction if his appointment violates § 1359. We have correctly applied the statute's proscription to suits brought by out-of-state fiduciaries who were imported to manufacture diversity between litigants residing in the forum state.

---

4. This action was not filed until shortly before the running of North Carolina's two year statute of limitations. There was a general allegation that jurisdiction was founded upon diversity of citizenship and the involvement of more than $10,000. Strangely, however, the specific allegations were that the plaintiff was a citizen of North Carolina and that Southern Railway was organized and existing under the laws of North Carolina with its principal place of business in Greensboro, North Carolina. There was thus no diversity of citizenship on the face of the complaint, unless the presence of diversity of citizenship was to be determined under the rule of *Miller v. Perry,* a rule which the plaintiff and his counsel now strenuously resist. By the time the factual situation was resolved and the actual jurisdictional question confronted, the limitations period had expired. No protective action had been filed in a state court.

1. 28 U.S.C. § 1359. provides that "A district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court."

*See, e. g., Bishop v. Hendricks,* 495 F.2d 289 (4th Cir. 1974); *Lester v. McFaddon,* 415 F.2d 1101 (4th Cir. 1969). The case now before us, however, differs from *Bishop* and *Lester.*

The record in this case unequivocally demonstrates that the North Carolina fiduciary was not appointed for the purpose of manufacturing diversity jurisdiction. The reason for the appointment was valid and substantial—the North Carolina law required that a local resident be named as an ancillary administrator. The plaintiff had no choice in the citizenship of the appointee. As the majority opinion acknowledges, the purity of the claimant's motive is beyond question.[2] It is the absence of an out-of-state fiduciary, appointed solely to manufacture jurisdiction, that distinguishes this case from *Bishop* and *Lester,* rendering them inapposite.

The two other cases, on which the majority relies, interpreting § 1359, are also not controlling. In *Kramer v. Caribbean Mills, Inc.,* 394 U.S. 823, 89 S.Ct. 1487, 23 L.Ed.2d 9 (1969), the Court held that the assignment of a debt, admittedly motivated to manufacture diversity jurisdiction, was improper or collusive within the meaning of § 1359. The Court noted, 394 U.S. at 828 n. 9, 89 S.Ct. 1487, the possibilities of abuse arising out of the appointment of out-of-state fiduciaries. But it gave no hint or suggestion that the appointment of a local citizen, as required by state law, was improper or collusive. Similarly, *McSparran v. Weist,* 402 F.2d 867 (3rd Cir. 1968), dealt with a suit brought by an out-of-state fiduciary named solely to manufacture diversity jurisdiction.

Section 1359 was enacted in its present form as a part of the 1948 revision of the judicial code. The Reviser's Note states that the statute is confined to cases where a device for conferring jurisdiction "is improperly or collusively made. . . ."[3] Nevertheless, the new rule adopted by the

court today dispenses with the necessity of proving collusion or other impropriety. It deletes these elements of the statute, and creates a per se rule to deny jurisdiction, even when, in compliance with the law of the state, a local fiduciary is selected in good faith. Neither the text of the Act nor the Reviser's explanation justifies this construction of § 1359.

The second exception to the general rule that the citizenship of the administrator determines diversity jurisdiction exists where application of a state statute requiring a local fiduciary to bring suit would violate the Supremacy Clause by eliminating federal jurisdiction. This exception was the basis of our decision in *Miller v. Perry,* 456 F.2d 63 (4th Cir. 1972).

In *Miller,* we held that the citizenship of non-resident beneficiaries rather than that of the resident ancillary administrator, whose appointment was required by law, determined jurisdiction in a suit brought against resident defendants. Any other conclusion, we emphasized, would insulate state citizens from federal actions brought by out-of-state beneficiaries for wrongful death. Therefore, we conferred jurisdiction to avoid holding the state law in conflict with the Supremacy Clause. In the case now before us, however, the defendant is not a citizen of North Carolina, so the appointment of a local administrator as required by state law will not bar federal jurisdiction. The constitutionality of the state law, therefore, is not in jeopardy, and the reason for applying *Miller* does not exist.

The problems inherent in determining diversity jurisdiction by the citizenship of a personal representative have long been recognized. *See generally* 6 Wright and Miller, Federal Practice and Procedure § 1557. As the most preferable reform, the American Law Institute proposes to attribute the citizenship of the decedent to the personal

---

**2.** The plaintiff brought suit in North Carolina for lawful, practical reasons. Because the accident occurred in that state, the witnesses are more readily available, and North Carolina law governs.

**3.** See *Kramer v. Caribbean Mills, Inc.,* 394 U.S. 823, 826, 89 S.Ct. 1487, 23 L.Ed.2d 9 (1969) where the Reviser's Note is quoted.

representative for the purpose of determining jurisdiction. *See* American Law Institute, Study of the Division of Jurisdiction between State and Federal Courts, official draft 1969, §§ 1301(b)(4), 1307. The rule, which the court today adopts, falls far short of achieving the simplicity and certainty of the Institute's proposal.[4] Instead of ascertaining the citizenship of one person as prescribed in the Institute's proposal, courts frequently will be required to consider the situation of many persons in a single case. For this reason, I predict that the new rule will raise far more questions than it settles.[5] Apparently the plaintiff will now be required to allege and prove jurisdictional facts with respect to each beneficiary. This in itself unfortunately may add considerable cost and complexity, especially in the discovery stages, to an issue that in most cases would be simple and undisputed under either the present rule or the Institute's proposal. *Cf.* J. Frank, American Law: The Case for Radical Reform, esp. at 185 (1969).

Finally, I believe the ruling in this case should be made prospective. This was the device adopted in *Lester v. McFaddon,* 415 F.2d 1101 (4th Cir. 1969) and in *McSparran v. Weist,* 402 F.2d 867 (3rd Cir. 1968). In both of those cases, although the claimants admittedly procured the appointment of out-of-state fiduciaries to manufacture jurisdiction, the injustice of applying the rule retrospectively was avoided. Similar injustice occurs here where the claimant is not even tarnished by collusion or impropriety.

4. If, indeed, we can change the present law despite the rule stated in *Mecom v. Fitzsimmons Drilling Co.,* 284 U.S. 183, 186, 52 S.Ct. 84, 76 L.Ed. 233 (1931) and the limited scope of 28 U.S.C. § 1359, we would do better to embrace the Institute's suggestion.

5. Among the more obvious questions are the following: Will the rule apply when the plaintiff is the executor named by the decedent? Will it apply when the personal representative is required to administer assets in addition to the wrongful death claim? If so, how substantial must these assets be? How will jurisdiction be determined when the decedent's estate is the beneficiary under the wrongful death act? In some states, funeral expenses and medical and hospital expenditure incident to

Moreover, we do not know how many cases are pending in district courts where meritorious claims for wrongful death, brought without collusion or impropriety in reliance on yesterday's law, will be destroyed if our new rule is not also applied prospectively to them.

the fatal injuries can be recovered in a suit for wrongful death. Are the creditors pressing these claims deemed beneficiaries within the meaning of the new rule? If each beneficiary is considered to be the real party in interest, is the claim of each beneficiary to be considered "separate and distinct" for the purpose of determining the jurisdictional amount? I mention these potential issues, not to disparage the desirability of reform, but to emphasize that the new rule is not likely to improve the present method of determining jurisdiction.