562 F.2d 326
 Shelcy MULLINS, Administrator of the Estate of Teresa Rae
Seals, an infant, Deceased, Appellee,
v.
Ruth Ann SEALS, Administratrix of the Estate of Charles
Jackson Seals, Jr., Deceased, Appellant.
 No. 76-1959.
 United States Court of Appeals,
Fourth Circuit.
 Argued March 16, 1977.
Decided Sept. 28, 1977.
 
 Carl E. McAfee, Norton, Va. (Hugh P. Cline, Cline, McAfee, Adkins & Gillenwater, Norton, Va., on brief), for appellee.
 Before HAYNSWORTH, Chief Judge, BRYAN, Senior Circuit Judge, and WINTER, Circuit Judge.
 HAYNSWORTH, Chief Judge:
 
 
 1
 Ruth Ann Seals, (hereinafter the mother) acting as administratrix of her husband's estate, appeals the judgment entered against the estate in a wrongful death action brought by Shelcy Mullins, the administrator of the estate of Teresa Rae Seals (hereinafter the daughter). The defendant argues that the district court lacked jurisdiction over the suit because, under the rule of Miller v. Perry, 456 F.2d 63 (4th Cir. 1972), the parties are not of diverse citizenship. The defendant also claims that the trial court erred in admitting certain evidence regarding the extent of damages. We agree with both of the defendant's contentions.
 
 
 2
 This suit arose from a helicopter crash. Charles Jackson Seals, the defendant's husband, was piloting a helicopter which crashed in Virginia. His daughter, Teresa Rae Seals, was a passenger. All of the occupants died in the crash. The daughter was survived by her mother and two brothers.
 
 
 3
 Charles Jackson Seals had an insurance policy which indemnified him and his estate against any judgment for the negligent operation of the helicopter. The mother and two brothers decided to bring a wrongful death action against the father's estate in order to recover from the insurance company. They brought the suit in Virginia and, as required by Virginia law, appointed a Virginia resident, Shelcy Mullins, administrator of the daughter's estate for the purpose of bringing the suit.
 
 
 4
 Mullins originally brought the suit in a Virginia state court against the mother who had qualified as administratrix of the father's estate. The defendant removed the case to the federal district court. In support of the motion to remove, the defendant stated that the plaintiff, Mullins, was a citizen of Virginia and that the defendant was not a citizen of Virginia but a citizen of Missouri. The defendant raised no objection to the district court's jurisdiction until after the jury returned a verdict of $278,000 for the plaintiff.
 
 
 5
 Miller requires that we look to the citizenship of the beneficiaries of the daughter's estate rather than that of the administrator, who was appointed merely for the purpose of bringing this action, in order to determine whether there is complete diversity of citizenship. Although there is some dispute as to whether the mother and brothers are citizens of North Carolina or of Missouri, it is clear that the mother and her sons have at all times been together in either one state or the other. Thus it is clear that all of the parties are citizens of the same state. The action was neither within the district court's jurisdiction under 28 U.S.C. 1332 nor removable under 28 U.S.C. 1441(a). Even though it is the defendant who originally removed the suit to the federal court and who now challenges the removal, we must vacate the judgment and remand to the district court with instructions to remand the action to the state court for a new trial.
 
 
 6
 The effect of our jurisdictional decision is minimal. Even if there were federal jurisdiction over this case, we would remand it to the district court for a new trial because we think the district court erred in permitting the plaintiff to introduce evidence regarding the daughter's work-life earning capacity.
 
 
 7
 The daughter was fourteen years old at the time of death. Her only job had been baby-sitting. Over the defendant's objection, the plaintiff introduced expert testimony regarding the earning capacity of an average white female similar to the daughter. The expert testified that a white female, age fourteen, has a life expectancy of 63.7 years and a work life expectancy of 40 years. He further testified that the annual earnings of white females in the southern United States, depending on the years of college, ranged from $6,000 to $8,000 a year. Based on his own computation, the expert testified that the work-life earning capacity of females comparable to the daughter is from $249,840 to $336,120, depending upon several factors.
 
 
 8
 The expert had never met the daughter. He did not know whether she would have attended college or the percentage of females similarly situated who do attend college. Nor did he know how much the daughter would have earned had she lived, indeed, whether she would have ever sought substantial employment or what her financial contribution to her brothers would have been if she had lived.
 
 
 9
 We think the evidence regarding the daughter's work-life earning capacity was irrelevant because there is no basis for a finding that the daughter would have made any substantial financial contribution to her mother or brothers if she had lived. The admission of that evidence was prejudicial here because the jury seems to have based its verdict on the expert's projections.
 
 
 10
 In denying a motion for a new trial, the district judge seems to have recognized that, under general principles, the testimony of the expert should have been excluded. He was persuaded to rule that it was properly admitted because of a relatively recent amendment to Virginia's Wrongful Death Statute.
 
 
 11
 Section 8-636.1 of the Virginia Code, as amended, now provides:
 
 
 12
 The verdict of the jury shall include, but may not be limited to, damages for the following: * * * (b) compensation for reasonably expected loss of (i) income of the decedent, (ii) services, protection, care and assistance provided by the decedent. * * *
 
 
 13
 The amended section has not been interpreted by the Supreme Court of Virginia, but there is nothing to indicate that the amendment of the statute was designed to radically alter the rules of computation of damages in wrongful death cases. Of course, the prospective earnings of a working husband and father, and the extent of their application to the support of his family, are highly relevant in an action for his wrongful death brought for the benefit of a dependent wife and dependent children. They suffer a "reasonably expected loss" of the benefit and enjoyment of his income. In contrast, here, the mother and the brothers suffered no "reasonably expected loss" of enjoyment of the potential earnings of the minor daughter. Sometimes children do contribute to the support of a parent or a sibling, but, in the usual course of events, a minor daughter may be expected to form her own family and to devote herself primarily to the care and comfort of the members of the new family. If she has earnings, the earnings normally would be applied primarily to the support of her immediate family unit. Only in compelling circumstances is it likely that earnings of a daughter may be expected to be applied substantially to the maintenance and support of her brothers and of her mother.
 
 
 14
 In the few cases which seem to have considered the admissibility of any projection of potential earnings of a minor decedent, it has been held improper unless clearly harmless in light of the verdict. Riksem v. Hollister, 96 Idaho 15, 523 P.2d 1361 (1974), Bartkowiak v. St. Adalbert's Roman Catholic Church Society, 40 A.D.2d 306, 340 N.Y.S.2d 137 (1973), Weaver v. Ford Motor Company, 382 F.Supp. 1068 (E.D.Pa.1974). Cf. Henry Grady Hotel Corporation v. Watts, 119 Ga.App. 251, 167 S.E.2d 205 (1969). Here the admission of the expert testimony cannot be considered harmless, for, in the jury's verdict, there is a strong indication that the jury firmly stood upon that testimony.
 
 
 15
 Thus the only effect of our jurisdictional ruling is to require that the retrial be in the state court rather than the district court.
 
 
 16
 VACATED AND REMANDED.
 
 
 17
 ALBERT V. BRYAN, Senior Circuit Judge, concurring specially.
 
 
 18
 I concur in the opinion of the majority because, as it amply demonstrates, the evidence rulings at trial were faulty and necessitated a new trial, and also because the present jurisdictional ruling is permitted by our decision in Vaughan v. Southern Ry. Co., 4 Cir., 542 F.2d 641 (1976). But I have reservations upon the correctness of the denial of jurisdiction. My concern is for the same reasons generally as were urged by Judge Butzner dissenting in Vaughan at 645.