**Irma H. SADLER, Executrix of the Estate of Johnnie Dewey Hodges, Jr., Deceased, Appellee,**

v.

**NEW HANOVER MEMORIAL HOSPITAL, INC., a corporation, Appellant.**

No. 77–2444.

United States Court of Appeals, Fourth Circuit.

Argued Nov. 16, 1978.

Decided Dec. 20, 1978.

A. Dumay Gorham, Jr., Wilmington, N. C. (Marshall, Williams, Gorham & Brawley, Wilmington, N. C., on brief), for appellant.

Lionel L. Yow, Wilmington, N. C. (Yow & Yow, John F. Crossley, Crossley & Johnson, Wilmington, N. C., on brief), for appellee.

Before WINTER, Circuit Judge, FIELD, Senior Circuit Judge, and PHILLIPS, Circuit Judge.

WINTER, Circuit Judge:

We authorized this interlocutory appeal to review the correctness of the district court's ruling that it had diversity jurisdiction in a wrongful death action against a citizen of North Carolina brought by an executrix who is a citizen of Virginia for beneficiaries who are citizens of North Carolina. We affirm.

## I.

Johnnie Dewey Hodges, Jr. was a citizen of North Carolina who became a patient in a hospital in Wilmington, North Carolina, operated by New Hanover Memorial Hospital, Inc. (hospital), a North Carolina corporation. Hodges died in the hospital, after having undergone surgery for the repair of a hiatal hernia, under circumstances indicating to his survivors negligent conduct on the part of some of the employees of the hospital which caused or contributed to his death. He died testate and he named as the executrix of his estate his sister, Irma H. Sadler, who is a citizen and resident of Virginia.

North Carolina does not prohibit non-residents from serving as executors, and Irma H. Sadler qualified as executrix of the estate. Her brother had been divorced from his wife but he was survived by two minor sons, both residing in North Carolina in the custody of their mother, who would be the beneficiaries of any recovery from the successful prosecution of a wrongful death action.

The executrix sued the hospital in the district court alleging wrongful death, claiming $1,500,000 damages, and invoking diversity jurisdiction. A like suit was filed in state court. The hospital moved to dismiss the suit in the district court, asserting that diversity jurisdiction was lacking because the real parties in interest were the minor sons, who were citizens of North Carolina, and the hospital, which was also a citizen of North Carolina. Alternatively, the hospital moved the district court to stay

the proceedings before it pending final adjudication of the suit in state court. The district court denied the motion to dismiss and certified the interlocutory appeal which we allowed. The district court reserved ruling on the motion to stay because plaintiff indicated her intention to dismiss the state suit if the jurisdiction of the district court was sustained.

## II.

As the district court correctly recognized, *Mecom v. Fitzsimmons Drilling Co.*, 284 U.S. 183, 52 S.Ct. 84, 76 L.Ed. 233 (1931), is dispositive of the jurisdictional issue in the present case unless it may be fairly said that *Mecom* has been overruled or sufficiently eroded that it should not be followed. *Mecom* held that where, as here, an administrator is required to bring a wrongful death action and to account faithfully for any recovery to the beneficiaries of the action under penalty of his bond, the administrator is the real party in interest and the district court should look to his citizenship and the citizenship of the other named parties to the suit to determine if there is diversity.[1] We followed *Mecom* in *Grady v. Irvine*, 254 F.2d 224 (4 Cir.), *cert. denied*, 358 U.S. 819, 79 S.Ct. 30, 3 L.Ed.2d 60 (1958), where we considered the citizenship of the administrator bringing a wrongful death action, in substitution for the pending personal injury suit of the decedent, determinative, with the result that diversity was defeated.

*Mecom* has not been specifically overruled. But in *Kramer v. Caribbean Mills*,

---

1. In *Mecom*, decedent's widow, as administratrix of his estate, brought three state wrongful death actions, under which the amount recovered was to be divided among the widow and her children. As each action was removed to the appropriate federal district court on grounds of diversity, the widow dismissed the suits. The widow then resigned as administratrix, and upon her request the probate court appointed an administrator whose citizenship was the same as that of one of the defendants. As a result, a fourth wrongful death action instituted by the new administrator could not be removed if the citizenship of the administrator was to be considered for diversity purposes. The Supreme Court so held, stating that:

> where an administrator is required to bring the suit under a statute giving a right to recover for death by wrongful act, and is, as here, charged with the responsibility for the conduct or settlement of such suit and the distribution of its proceeds to the persons entitled under the statute, and is liable upon his official bond for failure to act with diligence and fidelity, he is the real party in interest and his citizenship, rather than that of the beneficiaries, is determinative of federal jurisdiction.

*Id.* at 186, 52 S.Ct. at 86. The Court thought it immaterial that the motive for procuring the administrator's appointment was to avoid federal jurisdiction. *Id.* at 189, 52 S.Ct. 84.

*Inc.*, 394 U.S. 823, 89 S.Ct. 1487, 23 L.Ed.2d 9 (1969), when the Court held the assignment of claims to create diversity jurisdiction ineffective under the provisions of 28 U.S.C. § 1359, it reserved the question of whether, in cases in which suit is to be brought by an administrator or guardian, a motive to create diversity jurisdiction renders the appointment of an out-of-state representative improper or collusive. *Id.* at 828, 89 S.Ct. 1487, n.9.

Holding that *Mecom* did not decide that the rule it announced "was constitutionally or inflexibly the criterion for ultimate determination of diversity," *Miller v. Perry*, 456 F.2d 63, 65 (4 Cir. 1972), we construed the reservation in *Kramer* to indicate that we should give "attention to the substantive relation of the administrator, the beneficiaries and others to the controversy before an undiscriminating decision that the citizenship of a representative controls the determination of diversity jurisdiction." *Id.* at 66. By this approach, we have decided four cases forging exceptions to the literal *Mecom* rule.

In *Miller*, a North Carolina ancillary administrator, who was required by the then state law (now repealed) to be a citizen of that state, brought a wrongful death action in a North Carolina federal district court against North Carolina defendants to recover for non-resident distributees. Reversing the district court's dismissal for want of jurisdiction, we held that since the duties imposed on the administrator were limited and since he was appointed only to comply with state law, citizenship of the beneficiaries was controlling for diversity purposes. *Id.* at 67.

In *Bishop v. Hendricks*, 495 F.2d 289 (4 Cir.), *cert. denied*, 419 U.S. 1056, 95 S.Ct. 639, 42 L.Ed.2d 653 (1974), a wrongful death action arising out of the death of a citizen of South Carolina was brought against a defendant who was also a citizen of South Carolina by an administrator who was a citizen of Georgia but who had been appointed by a South Carolina probate court for the purpose of bringing the suit, since the estate had no other assets. The statutory beneficiaries of the action, should recovery be had, were also citizens of South Carolina. Relying on *Miller*, we held that the administrator's interest in the litigation was too nominal to support diversity. *Id.* at 295–96. Unlike *Miller*, however, *Bishop* was based also on the theory that appointment of a non-resident administrator for the sole purpose of creating diversity is improperly collusive under 28 U.S.C. § 1359. *Id.* at 297; *see Kramer v. Caribbean Mills, Inc.*, 394 U.S. 823, 89 S.Ct. 1487, 23 L.Ed.2d 9 (1969); *Lester v. McFaddon*, 415 F.2d 1101 (4 Cir. 1969); *McSparran v. Weist*, 402 F.2d 867 (3 Cir. 1968), *cert. denied*, 395 U.S. 903, 89 S.Ct. 1739, 23 L.Ed.2d 217 (1969).

As in *Miller*, *Vaughan v. Southern Railway Co.*, 542 F.2d 641 (4 Cir. 1976), involved a North Carolina ancillary administrator bringing a wrongful death action in North Carolina federal district court on behalf of non-resident beneficiaries. The defendants, however, were not citizens of North Carolina, but of Virginia, the domicile of the beneficiaries. Thus, rather than defeating diversity, the appointment of the administrator, if his citizenship were controlling, would have created federal jurisdiction. Finding that, although the appointment of a citizen of North Carolina was a state law requirement for the bringing of suit, the administrator had no stake in the outcome of the controversy, we concluded that his citizenship should be disregarded for purposes of determining diversity, despite the "purity" of the motives for his appointment, and that we should look to the citizenship of the beneficiaries and not to that of the administrator. *Id.* at 644.[2]

Most recently *Vaughan* has been followed, though not explicitly, in *Mullins v. Seals*, 562 F.2d 326 (4 Cir. 1977). There a Virginia administrator, required by state

---

**2.** As the dissenting member of the panel pointed out, insofar as neither the Supremacy Clause nor 28 U.S.C. § 1359 was implicated, *Vaughan* went beyond the rationale of *Miller* and *Bishop* and added considerable complexity to the determination of diversity jurisdiction. *Id.* at 645–47.

law to be a Virginia resident, initiated a wrongful death action in which both the defendant and the beneficiaries were citizens of the same state other than Virginia. We looked to the citizenship of the beneficiaries, instead of that of the administrator, in dismissing for want of jurisdiction.[3]

We think that each of these cases depends upon a factor or factors to justify a departure from the literal *Mecom* rule not present here. Unlike the state of the North Carolina statutory law at the time that *Miller* was decided, North Carolina did not require that the executrix here be a citizen of North Carolina, nor is her citizenship sought to be invoked to defeat diversity jurisdiction. Unlike *Bishop*, there is no real possibility of collusion here to create diversity jurisdiction. While there would be ample opportunity to make a collusive appointment of an out-of-state administrator after a cause of action for wrongful death had arisen, the designation of a non-resident executor in one's will, before a wrongful death suit is even imagined, cannot be so tainted.

*Vaughan* relied on neither the *Miller* nor the *Bishop* rationale—instead, it held that a stake in the outcome of the controversy was necessary to give controlling weight to the citizenship of the representative. *Vaughan*, however, is distinguishable from the instant case. First, *Vaughan* involved an administrator, selected after the event, not an executrix, named before the event. As we have shown, the appointment of an executor is less likely to be a product of collusion than is the appointment of an administrator. Thus, the need to show a stake as proof of a substantial and real interest in the litigation is far greater for an administrator than an executor. Second, *Vaughan* dealt with an ancillary administrator, appointed only to comply with a state procedural requirement. Here, on the contrary, the executrix acts as the manager of the decedent's entire estate, thus having a greater stake in the outcome of the controversy. While one

might argue that the duties of the administrator in *Bishop* were comparable to those of the executrix here, *Bishop* depended upon a presumption that the appointment was collusive. In the case at hand, there is no evidence of impropriety.

In summary, therefore, we cannot find in this case any reason or rationale to depart from the *Mecom* rule. Rather, the circumstances are such that the executrix is a real party in interest and her citizenship, rather than that of the beneficiaries, should control the determination of diversity jurisdiction. The exercise of diversity jurisdiction by the district court is therefore sustained.

*AFFIRMED.*

---

3. On this issue, a member of the panel concurred specially, stating his reservations about the correctness of the decision in *Vaughan* for the reasons assigned by the dissenter in *Vaughan*.