Cynthia K. MESSER, Administratrix of the Estate of James Richard Braedyn, deceased, Appellant,

v.

AMERICAN GEMS, INC.; Emerald Valley Camper's Club, Inc.; Emerald Valley Distribution Corp., Inc., Lois R. Rist, Appellees.

No. 79–1189.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 7, 1979.

Decided Jan. 3, 1980.

Creighton W. Sossomon, Sylva, N.C., for appellant.

William C. Gray, Jr., Wilkesboro, N.C. (Max F. Ferree, P.A., Wilkesboro, N.C., on brief), for appellees.

Before BRYAN, BUTZNER and MURNAGHAN, Circuit Judges.

MURNAGHAN, Circuit Judge:

On July 11, 1976, James Richard Braedyn, a nonresident of North Carolina,[1] was killed in an accident on the North Carolina premises of the sole remaining defendant, American Gems, Inc. American Gems, Inc., a Maryland corporation, because it had its principal place of business in North Carolina, was a citizen of North Carolina for purposes of determining whether there was diversity jurisdiction.[2]

The district court accepted, for purposes of the ruling it made, and so do we, the representation that decedent had no assets subject to administration, and that the claims for wrongful death were the only ones which would be asserted by any personal representative.[3] The rule that claims for wrongful death, while not constituting assets of the true estate, must be asserted by a personal representative applies both in North Carolina, N.C.G.S. § 28A–18–2, and in Florida, Fla.Stat. § 768.20 (Supp.1978).

The widow did not seek primary administration in Florida, or any administration in North Carolina. It appears that she left to North Carolina counsel retained to pursue the wrongful death claims the taking of all necessary steps. With the statute of limitations about to run,[4] counsel obtained letters of administration for Cynthia K. Messer, a member of his office staff and a resident of North Carolina, in whose name, as administratrix, the action in the United States District Court for the Western District of North Carolina was filed. Cynthia K. Messer had no other acquaintance or relationship with those entitled to claim wrongful

1. The record establishes that James Richard Braedyn was a nonresident of North Carolina and that his widow and minor children were residents of Florida. It is immaterial for our purposes whether James Richard Braedyn was also a Florida citizen. The controlling consideration is that neither he nor those entitled to benefits if his death was wrongful were North Carolina citizens.

2. 28 U.S.C. § 1332(c).

3. The representation runs somewhat counter to allegations in the complaint, (a) that only a small portion of decedent's 1974 salary of $19,500 was used to defray his personal living expenses and (b) that the decedent was prudent, industrious and thrifty, was accumulating property and assets and had a reasonable expectancy of acquiring a substantial accumulation of wealth. However, for reasons set out subsequently in this opinion the existence of other assets, unless they were located in North Carolina, would not affect the result. Since defendant, in its answer, alleged that the decedent did not leave any property or assets in Buncombe County, and none have come into Buncombe County, the matter probably is of no moment. However, if the defendant can establish that there were in fact substantial North Carolina assets other than the wrongful death claims requiring administration and that the North Carolina administrator who is the plaintiff has a duty to administer them, nothing would preclude reexamination by the district court of the jurisdictional question in light of such circumstances.

4. Suit in the United States District Court for the Western District of North Carolina was instituted on July 11, 1978, the second anniversary of the injury which occasioned James Richard Braedyn's death, and the last day for filing before the limitations period expired. N.C.G.S. § 1–53.

death benefits because of the death of James Richard Braedyn.[5]

The district judge raised *sua sponte* the question of whether the citizenship of the administratrix or the citizenship of the beneficiaries controlled for purposes of determining diversity jurisdiction. He held that the citizenship of the administratrix controlled and dismissed for want of jurisdiction.

Prior to 1975, a statute of North Carolina, N.C.G.S. § 28A–8–2, required that a wrongful death action, particularly one growing out of the death of a non-resident, be instituted by a personal representative who was a North Carolina resident. Since 1975 a non-resident has not been precluded by North Carolina law from qualifying as an administrator or ancillary administrator and bringing a wrongful death action. N.C. G.S. § 28A–4–2 disqualifies a non-resident only if he or she fails to appoint a resident to accept service of process. N.C.G.S. § 28A–26–3(a) permits a domiciliary personal representative in the state of the decedent's residence to take out ancillary letters, although a non-resident of North Carolina.

Had those changes in the statutory law of North Carolina not taken place, clearly diversity jurisdiction existed. *Miller v. Perry,* 456 F.2d 63, 68 (4th Cir. 1972) dealt with a situation identical with the instant case in all respects save one. The difference lay in the fact that the decedent's father took out domiciliary letters of administration in Florida, the state of residence of the decedent and of the father, and the decedent's grandfather, a North Carolina resident, solely because of the then extant statutory requirement, qualified in North Carolina as ancillary administrator and instituted the North Carolina wrongful death action in the United States District Court for the Eastern District of North Carolina. Chief Judge Haynsworth, speaking for the Court, held:

We conclude, therefore, that in determining the presence of diversity of citizenship when state law requires that the action be prosecuted in the name of a resident administrator, the citizenship of the beneficiaries, rather than that of the administrator, is relevant, and that such diversity is present here.

Other decisions of this Court, in related circumstances, make clear that the result should not be different simply because the named plaintiff is an administrator of a non-resident decedent rather than an ancillary administrator. The role, in either case, is that of a nominal party, and attention should be focused on the beneficiaries, the parties to whom the outcome will be significant. Such was the holding in *Lester v. McFaddon,* 415 F.2d 1101, 1103–4 (4th Cir. 1969). In that wrongful death action brought in the United States District Court for the District of South Carolina, the beneficiaries and defendants were all South Carolina residents. The decedent had died a South Carolina domiciliary. A Georgia attorney was appointed South Carolina administrator (not ancillary administrator) for the purpose of bringing the wrongful death action. No contention was made in the district court or on appeal that diversity jurisdiction was lacking. On appeal, after a full trial on the merits below, this Court raised the jurisdictional issue *sua sponte,* and determined that the purely nominal role of the administrator made it inappropriate to measure diversity on the basis of his citizenship. Rather the citizenship of the beneficiaries was deemed controlling. Again Chief Judge Haynsworth spoke for the Court:

In the circumstances of this case the administrator has no stake in the litigation. In South Carolina an action for wrongful death may be maintained only by an executor or administrator of the decedent's estate. The cause of action inheres in the personal representative, and the statutory beneficiaries cannot

---

5. The circumstances of the choice of Cynthia K. Messer as administratrix and her lack of other connection with the potential beneficiaries were not stated in the record. However, counsel for the defendant, with commendable candor, admitted at oral argument that the representations on those scores by counsel for the plaintiff were correct.

proceed in their own names. Any amount recovered, however, does not go into the decedent's general estate but is payable, upon receipt by the personal representative, directly to the statutory beneficiaries, here the decedent's numerous children. Had there been assets in the general estate of the decedent, the administrator would have been required to administer them, but there were no such assets here so that this administrator has as yet had no duties to perform.

Unless there is a recovery of some damages in the wrongful death action, the administrator here would never have anything to do; if there is a recovery, his duty is limited to receipt of the funds and their disbursement to a guardian of the statutory beneficiaries. He, of course, has a fiduciary duty to see that the litigation is pressed to a conclusion as long as there is any reasonable expectation of a recovery, but when the foreign administrator is procured by the lawyers handling the litigation he can hardly be expected to ride herd upon them or exercise any effective supervision of their conduct of the litigation. Except that he acquired his authority from the South Carolina Probate Court, he has no greater standing than the next friend of a minor or incompetent or a guardian ad litem whose residence has not been thought to be controlling of the question of diversity. Such a person is indeed a "straw party"

·    ·  · ·

The result was further buttressed, in Chief Judge Haynsworth's view, because appointment of the diverse Georgia resident was "an improper manufacture of jurisdiction", and therefore, within the prohibition of 28 U.S.C. § 1359.[6]

*Bishop v. Hendricks,* 495 F.2d 289 (4th Cir. 1974) on facts virtually identical to those of *Lester* likewise reached the result that there was no diversity jurisdiction even though there was the significant difference from *Lester* that the lower court determined that the motive for the securing of a South Carolina appointment of a Georgia resident as general administrator "was not the creation of federal jurisdiction".

In *Bishop,* the Court, while alluding to *Lester,* did so mainly to minimize the suggestion that a finding of collusive motive was necessary in order for a court to disregard the citizenship of a general administrator, and look instead to those who would benefit from any wrongful death recovery. The Court primarily based its result on *Miller* and particularly the holding "that when the responsibilities of the administrator are solely to institute the wrongful death action—when he is what one Court has described as 'an administrator *ad litem*' and no more—the Court would 'hinge the diversity determination to the citizenship of the wrongful death action beneficiaries, rather than to that of their representative.' " 495 F.2d at 291–92. It was the administrator's status as "an agent to sue 'without stake' in the litigation" which was deemed controlling. The Court acknowledged that the citizenship of a general administrator might be controlling "when a general administrator, having assets other than the wrongful death suit to administer and who, incidental to his duties as general administrator, files a wrongful death suit  .   .   . ". *Id.* at 295.

However, Judge Russell explained that the general administrator in *Bishop* was not in such a position, 495 F.2d at 295–6:

In this case, the administrator has failed to establish any substantive facts or to assign any valid reasons for his appointment that would give 'substance' to his representation or fix his status in the suit as different from nominal. Without any 'real [or] substantial interest in the outcome of the litigation', he possesses 'no stake in the litigation'. He has nothing to gain by the suit save a fee for the use of his name if successful, and, if the suit is lost, nothing to lose. In fact, it would seem that the beneficiaries of the

6. "A district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court."

action, if they chose to, could settle the action, with or without consulting him. Nor is the prosecution of the action incidental to any general fiduciary duties of an administrator. There are no assets in the estate other than this suit. The appellant has no knowledge of the accident out of which the litigation arose and can contribute nothing to its prosecution. He actually had no part in the selection or employment of counsel.

Judge Russell might have been describing the administratrix in the instant case.

In this connection, it would appear that, applying the *Bishop* rationale to the instant case, the test would be whether there existed assets *in North Carolina* for the North Carolina general administrator to gather in and apply and distribute. Assets which may exist in Florida would not appear to affect the situation since the North Carolina statute does not appear to contemplate what would be an unusual extension of the authority of an administrator for a non-resident decedent, even though he be appointed a *general* administrator, to allow him to administer assets located outside North Carolina. N.C.G.S. § 28A–3–1 speaks of administration in North Carolina for a decedent domiciled elsewhere in terms of property or assets located in the county where the administration is sought, and of priority for the county where proceedings for probate are first commenced where property or assets are located in more than one North Carolina county. So demonstration that the non-resident decedent had assets elsewhere than in North Carolina would not expand the role of the North Carolina administrator, even though he be a "general" rather than merely an "ancillary" administrator.

*Vance v. Southern Ry. Co.*, 138 N.C. 460, 464, 50 S.E. 860, 862 (1905) reinforces that conclusion. There the father of a Tennessee domiciliary killed in an accident in North Carolina took out letters of administration in North Carolina. At the time he did so, no letters had been obtained in Tennessee. The grant of letters to the father, therefore, could not be "ancillary", but

were as "general" as those issued in this case to Cynthia K. Messer. Subsequently, the decedent's widow was made administratrix of his estate in Tennessee. In those circumstances the North Carolina Supreme Court treated the creation of the status of general administrator as essentially the same as an appointment as an ancillary administrator:

> We therefore hold that the statute creating the right of action which cannot be enforced except by an administrator, and providing for a special distribution by said administrator of the proceeds, will warrant the probate court of the county where the intestate was killed in granting administration *for the purpose of enforcing such right of action.*" [Emphasis supplied].

Thus it appears that Cynthia K. Messer's status as administrator, rather than as ancillary administrator, of a non-resident decedent, is of no significance to the problem. *Miller* is on all fours with the present case, unless the intervening change in the North Carolina statute to permit non-residents to act as personal representatives would cause a different result. In our opinion, it clearly does not.

Subsequent to the decisions in *Lester, Miller* and *Bishop*, this Court had before it *Vaughan v. Southern Ry. Co.*, 542 F.2d 641 (4th Cir. 1976). The case concerned a fatal accident in North Carolina to a Virginia resident. The person causing the death was a Virginia citizen. The decedent's mother, who would be the beneficiary of any recovery for wrongful death, also resided in Virginia. She qualified as administratrix in Virginia for purposes of bringing suit for wrongful death. North Carolina law still required that the personal representative bringing a wrongful death action be a North Carolina resident, and such an individual took out letters of ancillary administration. He then sued in the Eastern District of North Carolina.

A dismissal for lack of diversity jurisdiction was held to be proper. Chief Judge Haynsworth, for the majority, distilled the essence of *Lester, Miller* and *Bishop* to con-

clude that the citizenship of the North Carolina administrator was not what controlled, but rather the citizenship of the beneficiary of the wrongful death claim. Chief Judge Haynsworth specifically stated that such was the test, unaffected by whether, as in *Lester*, there was any attempt at "an improper manufacture of jurisdiction". He acknowledged that the North Carolina statutory requirement that the personal representative be a North Carolina resident made the purity of the motive of the Virginia administratrix and beneficiary beyond question. The controlling factor was nevertheless the nominal nature of the position of the North Carolina administrator. His lack of a stake in the outcome made reference to his citizenship for purposes of determining whether there was diversity jurisdiction "artificial and shadowy". To be consistent with *Vaughan*, we, in the present case, should obviously look to the Florida citizenship of the beneficiaries and hold that diversity existed. The statutory requirement did not confer substantiality on the position of the administrator sufficient to require resort to his citizenship for purposes of deciding whether diversity jurisdiction existed. With the statutory requirement abrogated, there is even less substantiality.

The majority's conclusion in *Vaughan* that there was no jurisdiction since the potential beneficiary and the defendant were not diverse drew a dissent from Judge Butzner.[7] Judge Butzner expressed the view that, since the State law compelled the designation of a North Carolina resident as administrator to bring suit, and since there was no collusion to manufacture diversity jurisdiction, deference to State law should be shown. The State law made a North Carolina resident an indispensable party, and as such his status was substantial; hence his citizenship should be determinative for diversity jurisdiction purposes. The rationale of the dissent, of course, is that the statutory requirement is necessary to create substantiality of status. The corollary would be that the elimination of the

statutory requirement that the administrator be a North Carolina resident would enhance, not detract from, a conclusion that Cynthia K. Messer, as administratrix, was a purely nominal party. Hence, in the instant case, Judge Butzner's dissent would, as much as Chief Judge Haynsworth's majority opinion, dictate a ruling that there was diversity of citizenship. The amendment of the North Carolina statute removing the requirement that a North Carolina resident be the personal representative ended the only even arguable basis for a conclusion that the North Carolina administrator of a non-resident, qualified solely to bring a wrongful death action in North Carolina, has anything more than a nominal status.

Next came *Mullins v. Seals*, 562 F.2d 326 (4th Cir. 1977) where again the wrongful death claim beneficiaries and the defendant were citizens of the same state, either Missouri or North Carolina. Suit was brought in a Virginia state court by a Virginia resident who qualified as administratrix of the decedent. There was a Virginia statute creating a residency requirement for the personal representative similar to that formerly existing under North Carolina law. The case was removed to the United States District Court for the Western District of Virginia. This Court, relying on *Miller*, held that the citizenship of the beneficiaries was controlling for diversity determination purposes, not the citizenship of an administratrix appointed merely for the purpose of bringing the action. Again the statutory requirement that the plaintiff in a wrongful death action must be a resident was deemed insufficient to require reference to the nominal plaintiff's citizenship. Thus remand to the Virginia state court was directed.

The latest approach to the subject matter by this Court occurred in *Sadler v. New Hanover Memorial Hospital, Inc.*, 588 F.2d 914 (1978). There a sister of the decedent named as the executrix in the decedent's

---

7. Support for the position of the dissent has subsequently been expressed by Judge Bryan.

*Mullins v. Seals*, 562 F.2d 326, 329 (4th Cir. 1977).

will brought a wrongful death action in the Eastern District of North Carolina. The sister was a Virginia resident. The decedent was a North Carolina resident, as were the beneficiaries who would receive any recovery for his wrongful death. The defendant was a North Carolina corporation. Relying on the fact that the plaintiff was an *executrix*, who, under North Carolina law, was entitled, though a non-resident, to qualify in that domiciliary state and thus act as the manager of the decedent's entire estate, the Court, speaking through Judge Winter, determined that the plaintiff's stake was substantial, and so her citizenship should control. Accordingly, diversity jurisdiction was held to exist. The Court, consequently, was simply acknowledging, as Judge Russell had indicated in *Bishop*, that, where the personal representative who has been appointed by the decedent's domiciliary state, and therefore is in a position to manage the decedent's entire estate, has other duties to perform than merely the prosecution of the wrongful death claim and the payment of any recovery directly to the statutory beneficiaries, the personal representative may have so substantial a role to play that his or her citizenship should be the relevant consideration for purposes of deciding whether diversity jurisdiction exists.

Judge Winter relied on the entirely reasonable probability that someone named executrix in the decedent's will, well before the unanticipated death,[8] will have substantial duties to perform, and so will not merit the description as a nominal party. In the absence of a showing by the defendant that the wrongful death claim was the sole asset with respect to which the executrix would have any duties, the Court correctly proceeded on the opposite assumption.

In his opinion in *Sadler*, Judge Winter also pointed to a presumption of collusion in *Bishop*, since there the domiciliary administrator was only designated after the dece-

dent's death, when jurisdictional maneuvering for purposes of a wrongful death action was far more probable than when a will was being executed in the decedent's lifetime, prior to the fatal injury. On that score, the instant case presents no problems of possible collusion. The widow of James Richard Braedyn, as a Florida citizen, could perfectly properly have qualified as the administratrix, and thereupon filed an action in the United States District Court for the Western District of North Carolina. The selection of a North Carolina resident as administratrix who would file suit was the very opposite of collusive.

■ The relevance of collusion for diversity jurisdiction purposes is only that its presence will serve to defeat jurisdiction if, otherwise on the facts presented, diversity jurisdiction would be said to exist. Judge Winter in *Sadler* was simply pointing out that, if the general domiciliary administrator in *Bishop* should ordinarily have been treated as a party with a substantial stake, nevertheless a presumption of collusion arose from the fact that a non-resident was selected, after the decedent's death, and with filing of a wrongful death action looming on the horizon, when a resident of South Carolina was a much more likely choice. The presumption was not overcome, but indeed confirmed by the evidence in *Bishop* that the filing of the wrongful death action was the sole raison d'être for an administrator's appointment.

Here there clearly was no collusion, and so nothing inhibits referral to the citizenship of the beneficiaries rather than to the citizenship of a purely nominal administratrix with no stake in the matter.

Thus, the contention of the defendant, American Gems, that the repeal of the statutory requirement of a North Carolina resident as the personal representative who is to bring the action renders *Miller v. Perry* inapplicable as authority in this case misses

---

8. While death is always to be expected, in an unspecific way, the time, place and circumstances ordinarily are not. The decedent, divorced from his wife, in taking the altogether reasonable step of naming his sister as execu-

trix could not be charged with prescient plotting to achieve diversity jurisdiction should he die in circumstances giving rise to a wrongful death claim.

the mark. The importance of the former statutory requirement in the cases in this Circuit has solely been to indicate that, where a North Carolina citizen has, as a consequence of the statutory requirement, been a plaintiff, and the defendant has been a citizen of some other state, if diversity jurisdiction would otherwise exist it will not be denied on grounds of collusive choice of a diverse plaintiff in violation of 28 U.S.C. § 1359. The answer to the controlling question, whether there are other assets to administer or duties to perform which would make the role of the administrator substantial rather than nominal, is not affected by whether appointment of a local resident as administrator is statutorily required. Indeed, as Judge Butzner's dissent in *Vaughan* makes crystal clear, the repeal of the statutory requirement reduced the substantiality of the position of the administratrix. In the present case it eliminated any reason for saying that her position was other than nominal.

■ Plaintiff here being plainly non-collusive, having no stake in the matter, being appointed only to fulfill the North Carolina statutory requirement that still remains, namely that suit be brought by someone who has qualified as a personal representative, the beneficiaries have all the substantive interest in the case. Their citizenship controls, and confers diversity jurisdiction.[9]

Finally, there is left for disposition defendant's argument that this case represents a further departure from the rule in *Mecom v. Fitzsimmons Drilling Co.*, 284 U.S. 183, 52 S.Ct. 84, 76 L.Ed. 233 (1931) than justified by our prior holdings in *Lester, Miller, Bishop, Vaughan, Mullins* and *Sadler*. In *Mecom* the widow of the decedent took out domiciliary administration of his estate. She and her children, as beneficiaries of any wrongful death recovery,

were diverse in citizenship from the defendant. Three times she initiated actions in state courts. Each time, upon removal to the appropriate United States District Court, she dismissed her case. Finally, she resigned as administratrix in favor of an individual who had the same citizenship as the defendant. He sued in state court, there was a prompt removal, and remand was denied on the grounds that the substitution of the plaintiff for the widow as administrator was fraudulent and collusive. The Supreme Court reversed, on the grounds that the personal representative's citizenship controlled, and that his selection because his citizenship would *defeat* jurisdiction was not relevant.

This Court has held in *Miller*, 456 F.2d at 65–6:

> *Mecom,* however, did not decide that the citizenship of the personal representative in wrongful death actions was constitutionally or inflexibly the criterion for ultimate determination of diversity. Its assumption was that the personal representative was clothed with such responsibilities and authority that he, under federal standards, was the real party in interest. That assumption has been greatly undermined by the recent recognition in *Kramer v. Caribbean Mills,* 394 U.S. 823, 89 S.Ct. 1487, 23 L.Ed.2d 9, that the duties and responsibilities of administrators should be taken into account in federal determinations of the relevancy of the citizenship of such a personal representative to the presence of diversity jurisdiction. *Kramer's* recognition of a need to re-examine *Mecom,* and the relevance of the roles of administrators, frees us from a blind invocation of *Mecom's* result.

The erosion of *Mecom* occasioned by the several decisions from *Lester* through *Sa-*

---

9. In view of this conclusion, we need not consider whether a determination that there was no jurisdiction should only be applied prospectively and not in this case. *Cf. Lester v. McFaddon*, 415 F.2d 1101, 1106 (4th Cir. 1969). Nor need we address the question of whether a remand would be appropriate to permit substitution as party plaintiff of the widow, following

her qualification as administratrix in place of Cynthia K. Messer, thereby establishing beyond any peradventure of doubt the existence of diversity jurisdiction. *See McNamara v. Kerr-McGee Chemical Corp.*, 328 F.Supp. 1058 (E.D. N.C.1971); *but see Reynolds v. Floyd Cotton Mills*, 177 N.C. 412, 99 S.E. 240 (1919).

*dler* has quite sufficed to render it inapplicable here. Indeed, it is distinguishable in a way which would support reference to the Braedyn beneficiaries rather than to Cynthia K. Messer to determine citizenship. *Mecom* involved a general domiciliary administrator. As *Sadler* indicates, a general domiciliary administrator is closely akin to an executor, and so presumptively has a substantial stake in a wrongful death action which he initiates. The presumption will be overcome, or, more properly, the presumed fact, even if abundantly proven, will not be given weight where the person serving as general domiciliary administrator was chosen to *create* diversity jurisdiction. In *Mecom* departure from the presumption was not warranted because the selection of the substitute general domiciliary administrator was for the purpose of *defeating* diversity jurisdiction.[10] 28 U.S.C. § 1359 attaches no consequences to steps taken to *defeat* diversity jurisdiction.

In our case, we have a non-domiciliary administratrix, appointed solely to bring the wrongful death action. She bears little resemblance to the general domiciliary administrator in *Mecom,* and its holding has no pertinence here. By determining that there is diversity jurisdiction, we further the goal of such jurisdiction: "the protection of the noncitizen who is obliged to sue or be sued in the state of his adversary." *Miller,* 456 F.2d at 67.[11]

### REVERSED AND REMANDED.

---

**10.** See *Vaughan,* 542 F.2d at 644: "*Mecom,* however, dealt with a case in which the administrator had been selected because his citizenship was not diverse. The effort was not collusively to create federal jurisdiction, but to defeat it."

**11.** As in *Miller, id.* p. 68:

We approach, without achieving, the purpose of the proposal of the American Law Institute. It proposes a more satisfactory solution. It would attribute the citizenship of a decedent to any representative authorized to bring an action for his wrongful death. That proposal would avoid problems which may arise if the beneficiaries are of diverse citizenship or if their citizenship is different from that of their decedent, or if the problem arises in a dissimilar context from that presented here. It recognizes that if an action for personal injury by a surviving victim is appropriate for federal adjudication, the interstate character of the controversy is not significantly affected by his death from his injuries. Its rule is one which may be simply and economically administered to reach a rational conclusion.

That expression of preference for the A.L.I. proposal is echoed in Judge Butzner's dissent in *Vaughan.* In *Miller,* the view was taken that substitution of the simpler, more equitable rule proposed by the A.L.I. would require legislative enactment. Inasmuch as the rules heretofore in effect have led us to the same conclusion which application of the A.L.I. proposal would have dictated, albeit the path is far more winding and fraught with potential turnings into dead ends of irrationality, this is not the case in which to consider whether, in the continued absence of a statute, the time has come for us, on our own, to bring order out of potential chaos. In the future, however, we wish to alert the Bar to our perception that the cases have heretofore exalted facts which have no real pertinence and created situations pregnant with the possibility of decisions turning on irrelevancies. Such situations are to be avoided where possible, to prevent the bringing of the law into disrepute.

The presence of a personal representative on the wrongful death scene is, in one important respect, an aberration, for a recovery belongs not at all to the estate but directly to the statutorily designated beneficiaries. He is only a stakeholder, designated solely to prevent confusion as to who may sue and to obviate situations where benefits might otherwise be lost. At the same time, his selection derives from his identity with the decedent, the source of all rights created by a wrongful death statute. Without intimating that we should or can effect the change simply by judicial pronouncement, we, nevertheless, want it known that, if a case arises which presents the question in a way that its answer will affect the outcome, we shall expect the issue of the applicability of the A.L.I. proposal to be raised and fully presented.

In this connection, it should be observed that the A.L.I. proposal involves two steps: (1) the total elimination of the citizenship of the personal representative (executor, domiciliary administrator, foreign administrator or ancillary administrator) as a factor in determining whether diversity exists, and (2) the isolation of the decedent's citizenship as the sole factor to consider. The first of these steps is not a great one for a court to take, and but for the decision in *Sadler* nothing in the decisions of this Circuit would constitute an obstacle. *Mecom* has been limited and distinguished to the point that it likewise presents no substantial hurdle. The step would merely require acknowledgment that a personal representative, when bringing a wrongful death action, is a distinct, different fiduciary from the fiduciary who gathers the

estate assets, pays debts and administration expenses, and makes distribution of the assets of the true estate. The situation is akin to that of the same person named as executor and trustee in a will, or trustee of two different trusts created in the same testamentary instrument. Courts customarily treat the two guises as separate and distinct. We might, on full consideration in the appropriate case, conclude that the approach heretofore has been flawed in that it treats the personal representative as a single fiduciary, both in his guise as administrator of the true estate and in his guise as the initiator of a wrongful death action. Once we separate the two roles, the personal representative, wherever on the spectrum from domiciliary executor through ancillary administrator he falls, can uniformly be said to be a purely nominal party when performing the statutorily assigned function of prosecuting a wrongful death claim.

The second step under the A.L.I. proposal is a more difficult one. The beneficiaries, not the decedent, are the initial owners of the claim for wrongful death. However, the case may be a long time in coming which would require us to contemplate the second step. Family circumstances in these United States are still such that, more often than not, the beneficiaries will together have but a single domicile and it will be identical with that of the decedent. Even if beneficiaries reside in several states, or together reside in a state different from that in which the decedent resided, it will require a special concatenation of circumstances, related to the citizenship of the defendant or defendants, before the need to consider that second step will arise. Sufficient to that day will be the evils thereof.