Margaret M. KRIER–HAWTHORNE, Appellant,

v.

Thomas L. BEAM and L. Wallace Sink, Administrator of the Estate of Joseph Krier, deceased, Appellees.

No. 83–1363.

United States Court of Appeals, Fourth Circuit.

Submitted Oct. 6, 1983.

Decided March 2, 1984.

Girard C. Larkin, Jr., Sacks, Sacks & Larkin, Norfolk, Va., for appellant.

Joseph M. Young, Reynolds, Smith & Winters, Norfolk, Va., for appellee Sink.

Peter C. Manson, Jr., Pender & Coward, Norfolk, Va., for appellee Beam.

Before MURNAGHAN and ERVIN, Circuit Judges, and BUTZNER, Senior Circuit Judge.

BUTZNER, Senior Circuit Judge:

Margaret M. Krier-Hawthorne appeals from the district court's order dismissing her personal injury action for lack of jurisdiction, 558 F.Supp. 694. We vacate the judgment and remand the case for further proceedings.

## I

Mrs. Krier-Hawthorne was injured in an accident in York County, Virginia, when the automobile her husband was driving collided with one driven by Thomas L. Beam. Her husband, Joseph Krier, later died as a result of the injuries he sustained in the collision.

■ Virginia has abolished interspousal immunity in automobile accident litigation. *Surratt v. Thompson*, 212 Va. 191, 183 S.E.2d 200 (1971). When the surviving spouse contemplates bringing a personal injury action against the estate of a deceased spouse, who was a nonresident of the state, Virginia law requires the appointment of a resident administrator "solely for the purpose of prosecution of said suit . . . ." Virginia Code §§ 64.1–75.1 (1980) and 26–59 (Supp.1983). Consequently, because Joseph Krier had been a citizen of New York, his widow, through her attorney, secured the appointment of L. Wallace Sink, a Virginia resident, as administrator of her husband's estate.

The widow then filed a negligence action against Beam and Sink, the administrator. Jurisdiction was based on diversity of citizenship under 28 U.S.C. § 1332(a)(1). The widow was a citizen of New York, Beam was a citizen of Indiana, and Sink was a citizen of Virginia. Sink, through his attorney, filed an answer and moved to dismiss for lack of diversity jurisdiction.

The district court found that Sink was neither related to nor acquainted with the decedent. He is an attorney, a friend of the widow's attorney, and he agreed to serve as administrator so the widow could prosecute this suit. The court found that the estate had no assets "in Virginia or any other locality." It also found that if the widow prevailed, her damages would be paid by an insurance company and not from the decedent's estate.

The district court concluded that it lacked jurisdiction for two reasons. First, the New York citizenship of the decedent's heirs, and not the citizenship of the administrator, is decisive because the court found that the administrator had no assets to administer, no duties to perform, and no stake in the controversy. Second, the court perceived no "adversarial relationship" between the widow and the administrator and, consequently, no controversy in excess of $10,000 to be adjudicated.

## II

■ The second reason for dismissal requires but brief discussion. Although the widow, through her attorney, nominated the administrator to comply with Virginia law, the record discloses that there is a controversy between the widow and the administrator. The widow alleged that the decedent was negligent; the administrator denied this allegation and pleaded contributory negligence and assumption of risk. The widow alleged the district court had jurisdiction; the administrator moved to dismiss for lack of jurisdiction. The fact that a lawyer retained by the decedent's insurance carrier represents the administrator does not render the widow's claim against the administrator noncontroversial. Generally, in automobile negligence litigation, the insurance company, and not the insured or the personal representative of the insured, chooses counsel, asserts a defense, and conducts settlement negotiations.

Moreover, Virginia law, which governs this case, expressly recognizes that an adversary relationship and an adjudicative controversy exist between spouses, or the administrator of a deceased spouse, in automobile negligence litigation. Indeed, this is a premise for the abolition of interspousal immunity in this type of case. *See Surratt,* 212 Va. 191, 183 S.E.2d 200.

■ The record discloses that the decedent was insured by an automobile liability policy. Contrary to the district court's finding of no assets, the contractual obligation created by the policy is an asset of the estate. Sink administered this asset by promptly notifying counsel for the insurance company of this action. The company responded by undertaking the defense.

Finally, there is no suggestion in the record that the widow's damages are not in excess of $10,000. The fact that the estate does not have assets other than the insurance contract to satisfy these damages does not mean that the estate is without resources to pay the damages. It has a contractual claim for indemnification. Indeed, the Virginia Supreme Court expressly recognized in *Surratt* that insurance generally would be the source of a spouse's recovery.

The district court's reasoning appears to have been unduly influenced by the fact that the widow was suing her husband's administrator, whose appointment she obtained. But Virginia confirmed the propriety of her conduct by requiring the appointment of a resident administrator and abolishing interspousal immunity in this type of litigation. Surely no one would question Beam's right to nominate an administrator and sue in federal court in Virginia to recover damages in excess of $10,000 if he believed Krier was at fault. With respect to the adversarial nature of her claim and the source of compensation if she prevails, the widow, under Virginia law, is in a position similar to Beam's.

### III

The critical question is whether the parties are diverse. The answer depends on whether the administrator's Virginia citizenship is accepted for the purpose of determining diversity.

We start with *Mecom v. Fitzsimmons Drilling Co.,* 284 U.S. 183, 186, 52 S.Ct. 84, 85, 76 L.Ed. 233 (1931), a wrongful death case, where the Court said:

It is settled that the federal courts have jurisdiction of suits by and against executors and administrators if their citizenship be diverse from that of the opposing party, although their testators or intestates might not have been entitled to sue or been liable to suit in those courts for want of diversity of citizenship.

But the rule stated in *Mecom* is tempered by 28 U.S.C. § 1359, which denies jurisdiction if a party "has been improperly or collusively made or joined to invoke" jurisdiction. *See Bishop v. Hendricks,* 495 F.2d 289 (4th Cir.1974); *Lester v. McFaddon,* 415 F.2d 1101 (4th Cir.1969).

Our determination of diversity jurisdiction in wrongful death cases has been based on two factors. First, although not formally named as plaintiffs, the real parties in interest are the statutory beneficiaries who are entitled to recover damages if the defendant is liable for the death of their decedent. Second, although formally named as plaintiff, the administrator of the decedent's estate has no assets to administer in connection with the litigation and no stake in the outcome of the controversy.

These factors have led us to conclude that when the statutory beneficiaries and the defendant are citizens of different states, the district court has jurisdiction regardless of the common citizenship of the plaintiff administrator and the defendant. *See Messer v. American Gems, Inc.,* 612 F.2d 1367 (4th Cir.1980); *Miller v. Perry,* 456 F.2d 63 (4th Cir.1972). Conversely, the court lacks jurisdiction when the statutory beneficiaries and the defendant have identical citizenship even though the plaintiff administrator and the defendant are citizens of different states. *See Mullins v. Seals,* 562 F.2d 326 (4th Cir.1977); *Vaughan v. Southern Ry. Co.,* 542 F.2d 641 (4th Cir.1976); *Bishop,* 495 F.2d 289; *Lester,* 415 F.2d 1101.

Nevertheless, we have not departed altogether from the jurisdictional precept of *Mecom.* We have held that when the citizenship of an executrix differs from that of the defendant, the court has jurisdiction even though the decedent, the beneficiaries, and the defendant share a common citizenship. *Sadler v. New Hanover Memorial Hospital, Inc.,* 588 F.2d 914 (4th Cir.1978). Relying on *Mecom* and the Court's reservation of the jurisdictional issue pertaining to the citizenship of a personal representative in *Kramer v. Caribbean Mills, Inc.,* 394 U.S. 823, 828 n. 9, 89 S.Ct. 1487, 1490 n. 9, 23 L.Ed.2d 9 (1969), we reasoned that the citizenship of the executrix was controlling because she had duties other than serving as a nominal plaintiff, and there was little likelihood of collusion when the appointment was made before the events causing the testator's death.

### IV

Significantly, all of the cases mentioned above involved actions for wrongful death where the personal representative was named as plaintiff. This case presents the first occasion for considering the issue in a personal injury action where the administrator is named as defendant to comply with the law of the forum state. Should we abide by the general rule set forth in *Mecom* and applied in *Sadler,* as urged by the widow, or should we resort to the exception that we have created to *Mecom* in all of our recent wrongful death decisions, other than *Sadler,* and look to the citizenship of the decedent's heirs, as urged by the administrator?

For the following reasons, we conclude that we should follow *Mecom* and *Sadler* in personal injury actions brought in a state that dictates appointment of a resident administrator as a defendant. Unlike a wrongful death action, there are no statutory beneficiaries. Moreover, the decedent's heirs have no stake in the outcome of this case. They will be neither enriched nor impoverished by its outcome. They are not the real parties in interest. Consequently, unlike the statutory beneficiaries of a wrongful death action, the citizenship of the decedent's heirs should not be determinative.\* To hold otherwise would create a precedent that would unfortunately complicate personal injury litigation in this circuit. Every nonresident claimant suing a tortfeasor's resident administrator, appointed solely for the purpose of the action, would be barred from federal court if one of the tortfeasor's heirs, who had no interest in the litigation, happened to share a common citizenship with the claimant. *Mecom* avoids this unreasonable result by making the citizenship of the administrator decisive.

The appointment of a resident administrator, in conformity with Virginia law, does not establish collusion in violation of 28 U.S.C. § 1359. It was reasonable to file this action in Virginia, for the accident occurred there, Virginia law is applicable, and Beam could be served with process. In our wrongful death cases where state law required the appointment of a resident administrator, we did not base our decision on § 1359. Instead, we looked to the administrator's duties and found them to be nominal. *See Vaughan,* 542 F.2d at 644; *Miller,* 456 F.2d at 67. In this personal injury case, unlike the administrator in wrongful death cases, the defendant administrator has more than a nominal role. As we pointed out in Part II, he administered an asset of the estate by notifying the insurance company of the institution of the action as required by the decedent's policy. Moreover, the administrator had a stake in discharging this duty and the outcome of the case, for had he been dilatory, the company could have contested coverage. If the company were successful, the administrator would be

---

\* Ideally, the citizenship of the decedent should be the determinative factor, but *Mecom* forecloses this solution, and *Sadler* quite properly did not attempt to impose it. The American Law Institute more than a decade ago proposed to attribute the decedent's citizenship to his personal representative. *See* American Law Institute, Study of the Division of Jurisdiction between State and Federal Courts, official draft 1969, §§ 1301(b)(4), 1307. But Congress has not adopted the amendments the Institute proposed.

liable for failure to discharge his duty faithfully.

■ We conclude, therefore, that in this personal injury case no reason justifies departure from the rule stated in *Mecom* and followed in *Sadler* that the personal representative's citizenship is decisive. Because the parties are citizens of different states, the district court has jurisdiction.

We vacate the judgment of the district court dismissing the action and remand for further proceedings.

MURNAGHAN, Circuit Judge, dissenting:

For the eighth time in fifteen years the Court is called upon to decide whether the citizenship, as an individual, of a personal representative of a decedent's estate should be dispositive as to whether parties are diverse.[1] The present case involves a personal representative identified and appointed only after the decedent's death to facilitate pursuit of a claim by a plaintiff, the decedent having left no estate.[2] The claim is under an insurance policy of which the decedent was the insured.

All of our previous cases, save one,[3] have held that the personal representative's citizenship should be disregarded. Because the present case is more closely analogous to the precedents disregarding the personal representative's citizenship than the sole exception, I dissent. Independently, and as an additional ground for the conclusion I have reached, the time has come to repudiate, at least in cases involving decedent's

estates, what little is left of the "general" rule that a fiduciary's individual citizenship controls for diversity purposes.

I.

On September 25, 1980, Margaret Krier-Hawthorne was a passenger in a car being driven by her late husband, Joseph Krier. The car collided with another car being driven by Thomas Beam in York County, Virginia. Krier-Hawthorne and Joseph Krier were citizens of New York; Beam was a citizen of Indiana. Joseph Krier died on November 1, 1980. Joseph Krier left no estate for administration, so appointment of an administrator for customary purposes was not required, in New York or elsewhere. Krier-Hawthorne's brief baldly states that she "took steps to have a Virginia administrator appointed against whom she could institute the present proceedings". Asserting diversity of citizenship as the jurisdictional basis for her suit, Krier-Hawthorne, then a citizen of New York, filed in the United States District Court for the Eastern District of Virginia an action on September 21, 1982, against Beam, a citizen of Indiana, and Wallace Sink, a citizen of Virginia who had qualified as the administrator of the estate of Joseph Krier four days previously.

The salient issue is, of course, whether diversity of citizenship, the asserted basis for federal jurisdiction, exists. There is a long-standing requirement that there be complete diversity of citizenship between all of the plaintiffs and all of the defend-

---

1. The seven previous cases are: *Messer v. American Gems, Inc.*, 612 F.2d 1367 (4th Cir. 1980), *cert. denied*, 446 U.S. 956, 100 S.Ct. 2927, 64 L.Ed.2d 815 (1980); *Sadler v. New Hanover Memorial Hospital, Inc.*, 588 F.2d 914 (4th Cir.1978); *Mullins v. Seals*, 562 F.2d 326 (4th Cir.1977); *Vaughan v. Southern Railway Company*, 542 F.2d 641 (4th Cir.1976); *Bishop v. Hendricks*, 495 F.2d 289 (4th Cir.1974), *cert. denied*, 419 U.S. 1056, 95 S.Ct. 639, 42 L.Ed.2d 653 (1974); *Miller v. Perry*, 456 F.2d 63 (4th Cir.1972); *Lester v. McFaddon*, 415 F.2d 1101 (4th Cir.1969).

2. The appointment was made pursuant to a statute requiring a resident administrator

"solely for the purpose of prosecution of said suit...." Va.Code § 64.1–75.1 (1980) and 26–59 (Supp.1983). That manifestly referred to a purpose of the plaintiff.

3. *Sadler v. New Hanover Memorial Hospital*, 588 F.2d 914 (4th Cir.1978). The case differed from the six others, and from the instant case, because the personal representative was an executrix named, necessarily, before death (and, almost certainly, before the fatal accident) in the decedent's will, foreclosing any presumption of collusion or impropriety. Furthermore, there was no indication that the testator was destitute of other assets requiring administration.

ants in a diversity case. *Strawbridge v. Curtiss,* 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806).[4] Had Krier-Hawthorne, a citizen of New York, sued her husband, also a New Yorker, after the accident but before his death, complete diversity would not have existed. If she had, following her husband's death, sued his casualty insurance company, similarly there would be no diversity, since nothing in the record establishes that the insurance company was not a New York citizen. The burden, unmet here, is on Krier-Hawthorne, the plaintiff, to establish diversity. *See Fifty Associates v. Prudential Insurance Company of America,* 446 F.2d 1187, 1190 (9th Cir.1970).[5]

Krier-Hawthorne, seeking to rely on a rule she claims to be a traditional one that an executor's or administrator's citizenship, as an individual, controls for determining diversity of citizenship, arranged to have a Virginia citizen located by her lawyer ap-

pointed administrator of her husband's estate. *See Mecom v. Fitzsimmons Drilling Company,* 284 U.S. 183, 52 S.Ct. 84, 76 L.Ed. 233 (1931); *Coal Co. v. Blatchford,* 78 U.S. 172, 175, 11 Wall. 172, 175, 20 L.Ed. 179 (1870); *Childress v. Emory,* 21 U.S. (8 Wheat.) 642, 668–69, 5 L.Ed. 705 (1823); *Chappedelaine v. Dechenaux,* 8 U.S. (4 Cranch) 306, 2 L.Ed. 629 (1808). The flagship in that armada, *Mecom,* however, applied the "traditional" rule to uphold avoidance of diversity jurisdiction. The case was permitted to proceed in state court as "non-diverse." Krier-Hawthorne, on the contrary, was engaged in a venture designed to manufacture diversity jurisdiction. It is not surprising, therefore, that the "traditional" rule was shaken by *Kramer v. Caribbean Mills,* 394 U.S. 823, 828 n. 9, 89 S.Ct. 1487, 1490 n. 9, 23 L.Ed.2d 9 (1969) and subsequently eroded by this Circuit and other circuits.[6] The tremor initiated by *Kram-*

**4.** The Supreme Court has recently reaffirmed the complete diversity requirement for cases brought under 28 U.S.C. § 1332(a), the diversity statute. *Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 373–74, 98 S.Ct. 2396, 2402–03, 57 L.Ed.2d 274 (1978) ("[re-enactment of the diversity statute] clearly demonstrates a congressional mandate that diversity jurisdiction is not to be available when any plaintiff is a citizen of the same State as any defendant.").

**5.** There might, as subsequently indicated, be the additional difficulty, from Krier-Hawthorne's viewpoint, of an imputation of Joseph Krier's citizenship, *i.e.,* New York citizenship, to his insurance carrier.

**6.** The reason *Kramer* came to a radically different, 180 degree different, result from that indicated by *Mecom* is that it had before it additional authority, a controlling statute, not applicable, and hence not available, in *Mecom,* but fully applicable to the instant case. "[28 U.S.C.] Section 1359, of course, does not apply to the *Mecom* situation since it attempts only to limit federal jurisdiction and not to protect it." *Lester,* 415 F.2d at 1104; *cf. Vaughan,* 542 F.2d at 644 (*Mecom,* however, dealt with a case in which the administrator had been selected because his citizenship was not diverse. The effort was not collusively to create federal jurisdiction, but to defeat it."); *Messer,* 612 F.2d at 1375 ("28 U.S.C. § 1359 attaches no consequences to steps taken to *defeat* diversity jurisdiction."). *Kramer* held that an assignment, which was legal under Texas law, nevertheless,

was collusive under 28 U.S.C. § 1359. The statute prohibits improper or collusive action to invoke the jurisdiction of a federal court. Thus, in *Kramer,* the assignee's citizenship was not considered for the purpose of establishing diversity of citizenship. 398 U.S. at 829–30, 89 S.Ct. at 1490–91. *Kramer* was significant because it discarded *Mecom*'s holding that to look behind the appointment of an administrator and rule that his citizenship was not controlling would be an impermissible collateral attack on a state court decree. *See Mecom,* 284 U.S. at 189, 52 S.Ct. at 87; *cf. Miller,* 456 F.2d at 66–67 ("[*Mecom*] rested on the twin pillars of the earlier views that looking behind the appointment of an administrator to the reality was somehow a collateral attack on the order of appointment, and that inquiry into motive was impermissible. *See, Black & White Taxicab & Transfer Co. v. Brown & Yellow Taxicab & Transfer Co.,* 276 U.S. 518, 48 S.Ct. 404, 72 L.Ed. 681 (1928). Neither view can survive *Kramer.*"). Indeed, what is of controlling importance is that *Mecom* upheld the right to *defeat* federal diversity jurisdiction by careful orchestration of who was to play the role of administrator. 28 U.S.C. § 1359 does not forbid that behavior, only the reverse. We have before us, however, a direct attempt to confer jurisdiction on a federal district court in a frontal assault on 28 U.S.C. § 1359.

The severe cutting back on the traditional rule of *Mecom* had already begun prior to *Kramer* in *McSparran v. Weist,* 402 F.2d 867 (3d Cir.1968), *cert. denied,* 395 U.S. 903, 89 S.Ct. 1739, 23 L.Ed.2d 217 (1969). The trend

*er* extends to and, perhaps, beyond the case *sub judice.*

The previous cases in other circuits and this Circuit have all dealt with plaintiff personal representatives bringing wrongful death actions. But the technical status of Sink as a defendant rather than a plaintiff is hardly of material significance bearing in mind that his appointment and appearance on the scene are exclusively "for the purpose of *prosecution*" of the law suit. All of the cases have examined the executor's or administrator's duties and relationship to the decedent and only considered the personal representatives's citizenship as significant where the fiduciary (1) had duties other than to bring suit or (2) was related to the decedent in some fashion.[7] The probability is great that a widow, a sibling or a child will automatically have a genuine and substantial interest, even if not a financial one, and so be, in truth, a real party in

interest. Otherwise, the cases have held that the citizenship of the beneficiaries controls because the beneficiaries, not the personal representatives, are the real parties in interest, *i.e.*, had a substantial stake in the outcome.[8]

The majority opinion is correct that the present case, where the administrator is a defendant in a tort action, is not altogether like a wrongful death action brought by the administrator, as plaintiff. But a mere distinction does not necessarily mandate a difference in treatment, especially, where, as here, it has no significance to the controlling considerations. No case has ever addressed the issue of whether the citizenship of a *defendant* fiduciary should be disregarded where the administrator had no substantial stake in the controversy. The majority opinion states that, since the decedent's heirs have no stake in the outcome of the case, they are not the real parties in

accelerated thereafter. In *McSparran,* the Third Circuit held that the citizenship of a minor's guardian, selected solely for the purpose of creating diversity, should be disregarded. In *Lester,* we held the citizenship of a Georgia administrator of a South Carolina decedent's estate should be disregarded, because the Georgian's appointment was obtained for the purpose of creating diversity. Other circuits which have followed *Lester*'s lead and disregarded the citizenship of decedents' personal representatives whose only function was to bring a diversity case in federal court are: the Second Circuit, *O'Brien v. AVCO Corp.,* 425 F.2d 1030 (2d Cir.1969); the Fifth Circuit, *Kenebrew v. Columbia Land and Timber Co., Inc.,* 454 F.2d 1146 (5th Cir.1972); *White v. Lee Marine Corp.,* 434 F.2d 1096 (5th Cir.1970); *Bass v. Texas Power & Light Co.,* 432 F.2d 763 (5th Cir.1970), *cert. denied,* 401 U.S. 975, 91 S.Ct. 1194, 28 L.Ed.2d 324 (1971); the Seventh Circuit, *Betar v. DeHavilland Aircraft of Canada, Ltd.,* 603 F.2d 30 (7th Cir.1979), *cert. denied,* 444 U.S. 1098, 100 S.Ct. 1064, 62 L.Ed.2d 785 (1980); and the Eighth Circuit, *Bartnick v. Reader Co., Inc.,* 487 F.2d 1021 (8th Cir.1973). The Tenth Circuit has accepted the reasoning of *Lester* and its progeny in *Hackney v. Newman Memorial Hospital, Inc.,* 621 F.2d 1069 (10th Cir.1980), *cert. denied,* 449 U.S. 982, 101 S.Ct. 397, 66 L.Ed.2d 244 (1980). However, the *Hackney* Court held that the appointment of the decedent's daughter, *i.e.*, a close family member in the statutory list of preferred persons to serve [*see* Okla.Stat. title 58, § 122] as personal representative, was immune to challenge as an attempt merely to create diversity

jurisdiction. Sink was unrelated to Joseph Krier.

7. *See Hackney v. Newman Memorial Hospital, Inc.,* 621 F.2d 1069 (10th Cir.1980), *cert. denied,* 449 U.S. 982, 101 S.Ct. 397, 66 L.Ed.2d 244 (1980) (administratrix—decedent's daughter); *Woods v. Holy Cross Hospital,* 591 F.2d 1164 (5th Cir.1979) (administratrix—decedent's widow); *Sadler v. New Hanover Memorial Hospital,* 588 F.2d 914 (4th Cir.1978) (executrix—decedent's sister, named in will); *O'Brien v. Stover,* 443 F.2d 1013 (8th Cir.1971) (administratrix—decedent's daughter, sole heir).

8. The term "real party in interest" has both a procedural and a substantive meaning. *See* Fed.R.Civ.P. 17(a); Recent Decisions, 36 Md.L. Rev. 901, 907 n. 31 (1977); *cf.* Clark & Hutchins, *The Real Party in Interest,* 34 Yale L.J. 259 (1925); Simes, *The Real Party in Interest,* 10 Ky.L.J. 60 (1922). In *Lester v. McFaddon,* 415 F.2d 1101, 1105–06 (4th Cir.1969), Chief Judge Haynsworth lucidly described the difference between a "real party in interest" for the purpose of Rule 17(a) and a "real party in interest" for the purpose of determining diversity of citizenship. A "real party in interest" for the purpose of Rule 17(a) is merely a person authorized to bring a suit in his own name without joining his beneficiaries. A "real party in interest" for the purpose of determining diversity of citizenship is a person who has a "substantial stake" in the outcome of the case. The term is used here in the latter sense.

*See also Navarro Savings Assn. v. Lee,* 446 U.S. 458, 462 n. 9, 100 S.Ct. 1779, 1782 n. 9, 64 L.Ed.2d 425 (1980).

interest. With that premise, there is no occasion to quarrel. The majority also states that the citizenship of the decedent's heirs should not be determinative in cases like the present one. We may accept that for present purposes.[9] However, it by no means follows, as the majority has concluded, that, since the beneficiaries are not the real parties in interest, the personal representative must be. It is on that spongy ground that the majority rests its conclusion that we should automatically follow *Mecom* and make the citizenship of the defendant-fiduciary decisive. That uncritically assumes that, since the beneficiaries are not real parties in interest, Sink must be. To do so, however, simply ignores that Sink, who has, neither in a fiduciary way nor personally, any interest in the outcome of the litigation,[10] is demonstrably not a party in interest. Indeed, on the Krier side of the defense, the sole party in interest is the insurance carrier for Joseph Krier. On the plaintiff's side it is Krier-Hawthorne. Diversity between them, as the record stands, simply is lacking.

*Lester* and its progeny are based on the prohibition of improper or collusive joinder to invoke jurisdiction contained in 28 U.S.C. § 1359.[11] *See, e.g., Lester,* 415 F.2d at 1105–06; *Bishop,* 495 F.2d at 289; *Vaughan,* 542 F.2d at 644; *Messer,* 612 F.2d at 1374. Section 1359 is not limited to any type of party or action. "Section 1359 should ... be construed broadly to bar *any* improper attempt to create federal diversity jurisdiction." *Prudential Oil Corp. v. Phillips Petroleum Co.,* 546 F.2d 469, 475 (2d Cir.1976) (emphasis added). The majority attempts to limit *Lester* to cases involving

*plaintiff* personal representatives improperly or collusively joined and let *Mecom's* reign continue unquestioned in all other areas. However, that we should not do. *Kramer v. Caribbean Mills, Inc.,* 394 U.S. 823, 828–29, 89 S.Ct. 1487, 1490–91, 23 L.Ed.2d 9 (1969), sounded a clarion call to the federal courts to re-examine the significance of the citizenship of representatives. As Chief Judge Haynsworth has said:

> *Kramer's* recognition of a need to re-examine *Mecom,* and the relevance of the roles of administrators, frees us from a blind invocation of *Mecom's* result. At the very least, *Kramer* authorizes attention to the substantive relation of the administrator, the beneficiaries and *others to the controversy* before an undiscriminating decision that the citizenship of a representative controls the determination of diversity jurisdiction.

*Miller v. Perry,* 456 F.2d 63, 65–66 (4th Cir.1972) (emphasis added). The majority seems to say we have two choices as to whose citizenship controls—the heirs', who are analogous to the beneficiaries in a wrongful death case, and the administrator's. *Kramer* freed the courts from rigidity; the hallmark of *Lester* and its progeny has been a desire to tie in to the actual dynamics of a case and determine citizenship based on the real party in interest.

It is clear that Sink, the Virginia administrator, was appointed for the sole purpose of being sued. "[T]he administrator's lack of a stake in the controversy was enough to make his citizenship irrelevant." *Vaughan,* 542 F.2d at 644. It is true that, for purposes of Virginia law,[12] the appointment

---

**9.** *See* part II, *infra.*

**10.** He stands to gain nothing, he stands to lose nothing, however the case might be decided on the merits. The normal defendant, protected by insurance, affords no exact or even close analogy, despite the contrary suggestions of the majority. *Cf.* Majority Op. at 659. He would be exposed to any excess judgment over and beyond the policy limits. Sink would not be. A plaintiff would go after the normal defendant to the extent of any judgment not met by the insurance company. Sink faces no such risk. The normal defendant, consequently has

a real, a substantial interest in the outcome. Sink does not.

**11.** A district court shall not have jurisdiction of a civil action, in which any party by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court.
28 U.S.C. § 1359.

**12.** Here, however, the question we must wrestle with is one of federal law. *See Lester,* 415 F.2d at 1105 ("[Whether an administrator's citizenship should be disregarded] seems clearly a federal question, the answer to which need not

was not collusive. "The appointment may be assumed to be valid in every respect and the administrator perfectly free to pursue the action in the state court." *Id., quoting Lester,* 415 F.2d at 1105. The same may be said of Krier-Hawthorne's freedom as plaintiff to sue in the state court. Virginia state law required, for the case to proceed in the Commonwealth, that a Virginia citizen serve as defendant, either as administrator or co-administrator.[13] Yet, Sink is unrelated to the decedent or any of the beneficiaries. He had no interest himself in the outcome of the litigation. His services were obtained by the *plaintiff's* lawyer and he was sued four days after he qualified for appointment. Indeed, unless and until Sink turned to Krier's insurance carrier and invoked coverage, including the responsibility to provide a defense and the obligation to pay the judgment, if any, up to policy limits, there was simply no case or controversy alive before the court. Strong indicia lead irresistibly to the conclusion that the appointment was, for purposes of federal, if

not state, law, obtained improperly to create diversity jurisdiction in violation of 28 U.S.C. § 1359. The interests which the majority contends[14] make the administrator a real party in interest arose only because he agreed to serve in that effort and were wholly incidental in nature.[15] Under 28 U.S.C. § 1359 either collusive *or* improper action defeats otherwise existing jurisdiction. While arguably not "collusive," even for federal purposes, Sink's appearance as a party was "improper" for those purposes since it served no useful end and so should not become the basis of diversity jurisdiction.[16] If the objective of the law is not forwarded, an achievement of a purely formal nature, devoid of consequences other than those bearing on determination of diversity, should be allowed no significance. *Cessante ratione cessat ipsa lex.*

"Reasonable" from some points of view of Virginia state law, the filing of the action did not *properly,* under 28 U.S.C. § 1359, create jurisdiction in the federal court.[17] The same thing may be said of the

be influenced by the fact that the state court has authorized him to proceed in the litigation in a proper manner in a proper court, the state court being unquestionably a proper one."); *cf. Memphis Street Railway Co. v. Bobo,* 232 F. 708, 710 (6th Cir.1916), *aff'd,* 243 U.S. 299, 37 S.Ct. 273, 61 L.Ed. 733 (1917) (a nonresident administrator who qualified in Tennessee was not a Tennessee citizen for diversity purposes, even though a Tennessee statute said such a person was a Tennessee citizen, because the jurisdiction of a federal court cannot be impaired or annulled by a state statute).

13. Virginia law provides that an administrator can be appointed to represent an estate against which a cause of action is anticipated. Va. Code § 64.1–75.1 (1980 replacement volume). Section 64.1–75.1 does not mention whether the administrator must be a Virginia resident. However, all nonresident fiduciaries had, until 1983, to have a resident cofiduciary. Va.Code § 26–59 (1979 replacement volume). In 1983, § 26–59 was amended. The amended statute does not require a resident cofiduciary if the nonresident fiduciary is, *inter alia,* a descendant of a decedent or a surviving spouse. Va. Code § 26–59(B) (1983 supplement). However, the 1983 amendment was not in effect when Krier-Hawthorne sought Sink's appointment. Otherwise she could have qualified as administratrix and sued herself, which certainly would reveal the ephemerality of the role of the personal representative.

14. *I.e.,* the notifying of the decedent's insurance company of the action and the administrator's potential, but here altogether illusory, liability for a failure to discharge his duty to administer the estate faithfully.

15. To speak as the majority does, Majority op. at 659, of denial of liability by Sink and his pleading of contributory negligence and assumption of the risk as evidence of his having an interest is to exalt form above substance for it is the insurance company which in fact is doing the pleading. Indeed, a sentence or two further on the majority acknowledges that it is the insurance company who actually is asserting defenses through counsel of its choice.

16. In *Vaughan,* it was conceded that it was not easy to say that appointment of the administrator was collusive, mandated as it was by North Carolina law. Purity of motive was acknowledged to be "beyond question." Yet 28 U.S.C. § 1359 was invoked to prohibit conversion of the controversy between citizens of Virginia "into one between citizens of different states." 542 F.2d at 644.

17. Krier-Hawthorne was allegedly injured by the negligence of Beam and her late husband. Virginia is probably the only forum which has jurisdiction over both men. The question is, however, whether the Commonwealth courts alone provide a forum or whether the federal

necessity under Virginia law, that, when Krier-Hawthorne filed the action, a Virginia resident had to be appointed co-administrator of the decedent husband's estate. It was "reasonable" for the appointment to be made, and would have been a prerequisite to suit in a court of the Commonwealth. But it does nothing to achieve the purposes underlying diversity jurisdiction in a federal court.

Returning to the matter of "improperly or collusively," in *Vaughan* we held that, even though there was good reason to bring a wrongful death action in North Carolina and North Carolina law required that a North Carolinian be appointed administrator, the appointment was not compatible with Section 1359. Chief Judge Haynsworth said:

> Here, Vaughan has no stake in the outcome of the controversy; given the decision to file the action in North Carolina, his appointment was not solely for the purpose of creating diversity of citizenship, but the attempt to put it to that use may be regarded as a substantial equiva-

lent. With no stake in the outcome of the controversy, substantive diversity of citizenship is as artificial and shadowy as it was in *Lester* and in *Bishop*. In that sense, it is pretense, not reality. Indeed, in *Bishop* we said that the administrator's lack of a stake in the controversy was enough to make his citizenship irrelevant. 542 F.2d at 644. The reasoning is equally applicable to the present case which it fits like a glove of the finest kid leather.[18] Regardless of whether he is denominated "plaintiff" or "defendant," Sink's role precisely parallels that of the administrator in *Vaughan*. 28 U.S.C. § 1359 bars any improper or collusive joinder, by plaintiff or defendant, not an improper joinder by plaintiff alone.

There is a presumption against diversity jurisdiction. *Lehigh Mining and Manufacturing Co. v. Kelly,* 160 U.S. 327, 337, 16 S.Ct. 307, 311, 40 L.Ed. 444 (1895); *see also McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936). Krier-Hawthorne, since she was the plaintiff below, has the burden

district court also provides an additional proper forum.

The reliance by the majority, Majority op. at 660, on a supposed analogy between Beam and Krier-Hawthorne to support federal jurisdiction in Krier-Hawthorne's case is simply misplaced. Beam could appoint a Virginia administrator for Krier and sue in federal court because, coming from Indiana, he is diverse in his own right from Krier and probably from Krier's insurance company. Krier-Hawthorne, from New York, simply is not.

**18.** The author of the present majority opinion dissented from the majority opinion in *Vaughan.* His criticism of *Vaughan,* that it interprets Section 1359 too broadly, has been voiced by others, too. *See, e.g., Gross v. Hougland,* 712 F.2d 1034, 1039 n. 10 (6th Cir.1983); Note, 18 B.C.Ind. & Com.L.R. 975, 995 (1977). Whatever the merits of the *Vaughan* dissent, the majority opinion in that case remains as precedential and binding authority. I simply am not persuaded that a distinction amounting to a difference exists between *Vaughan* and the present case. The question in each case is whether selection of the fiduciary was to bring about diversity jurisdiction. An executor named in a will executed before an accident even took place almost certainly was not selected for such a purpose. Here, however, as

also in *Vaughan,* the administrator was selected after the accident, partly to conform to a state law requirement, but mainly to invoke diversity jurisdiction. The results in *Vaughan* and the instant case should be the same. Else 28 U.S.C. § 1359 is disregarded.

To the extent the majority attempts to spell out that other duties existed for Sink as administrator making his "more than a nominal role," they all directly relate to the very steps designed to "invoke the jurisdiction" of the federal district court in Virginia, namely the very activity 28 U.S.C. § 1359 is designed to prevent. Those duties consist of (1) "notifying the insurance company of the institution of the action as required by the decedent's policy" and (2) exercising "a stake in discharging this duty and the outcome of the case, for had he been dilatory, the company could have contested coverage" making Sink "liable for failure to discharge his duty faithfully." Majority op. at 661.

Yet, over and beyond that telling consideration, the duties are truly not more than nominal, constituting behavior which one can be sure Krier-Hawthorne's attorney monitored and controlled, rather than leave them to chance or solely to his accommodating friend, Sink, since the actions were crucial to Krier-Hawthorne's recovery from the insurance company.

of showing that federal jurisdiction exists. *Gibbs v. Buck,* 307 U.S. 66, 72, 59 S.Ct. 725, 729, 83 L.Ed. 1111 (1939). Our precedents and obvious facts clearly demonstrate that Sink is a party without any real interest. His presence is solely as an *alter ego* of the insurance carrier for Joseph Krier. The insurance carrier is the real party in interest. It has not been shown to be diverse from Krier-Hawthorne. Krier-Hawthorne, consequently, has not proven that complete diversity exists between herself and the defendants. *See Fifty Associates v. Prudential Insurance Company of America,* 446 F.2d 1187, 1190 (9th Cir.1970). Therefore, she has failed to meet her burden and her assertion of diversity jurisdiction must fail.

In a nutshell, the decision as to whose citizenship should control—as to who is the real party in interest on the defendant side associated with Krier—is not limited exclusively to a choice between the personal representative and the heirs or beneficiaries. If there is another possible alternative, it should also be considered. In the present case the only person with a substantial interest in the outcome of the case, other than the plaintiff and Beam, the co-defendant, is the decedent's automobile liability insurer. The decedent's estate is wholly without assets and the personal representative is at most a purely formal party.

The present case is, in essence, a direct action against the decedent's insurer. The only reason this case was not filed directly against the insurer is because Virginia does not have a direct action statute. In 1964, the Congress amended the diversity statute to provide that the insured's citizenship controls in a direct action.[19] The Congress was responding to the fact that large numbers of cases, involving local residents, were being filed in the federal district courts of Louisiana because of Louisiana's direct action statute. *See* S.Rep. No. 1308, 88th Cong., 2d Sess., *reprinted in* 1964 U.S.Code Cong. & Ad.News 2778, 2779. The 1964 amendment recognizes that, where the insurer is the only party on the defendant's side with a financial interest, the issue of whether there is diversity jurisdiction should depend on the citizenship of the participants in the incident that gave rise to the case, not the citizenship of a party irrelevant to diversity yet selected with federal jurisdiction on a diversity basis in mind. Thus, where a direct action may be brought, the citizenship of the insured is imputed to his insurance company, the party with the financial stake. In the present case, the insurer is the only party with a financial stake. But the incident that gave rise to the present case involved two non-diverse parties, Joseph Krier and Margaret Krier-Hawthorne. Thus, adopting the spirit and objective of the 1964 Amendment,[20] we should impute Joseph Krier's New York citizenship to his liability insurer, the only real party in interest on the Krier side of the defense. Thus, there is an absence of complete diversity in the present case since

**19.** 28 U.S.C. § 1332(c) provides, in pertinent part:

> That in any direct action against the insurer of a policy or contract of liability insurance, whether incorporated or unincorporated, to which action the insured is not joined as a party-defendant, such *insurer shall be deemed a citizen of the State of which the insured is a citizen,* as well as of any State by which the insurer has been incorporated and of the State where it has its principal place of business.
>
> (Emphasis added).

**20.** In *Moragne v. States Marine Lines, Inc.,* 398 U.S. 375, 392, 90 S.Ct. 1772, 1783, 26 L.Ed.2d 339 (1970), the Supreme Court said:

> It has always been the duty of the common-law court to perceive the impact of major legislative innovations and to interweave the

> new legislative policies with the inherited body of common-law principles. . . .

The view expressed in *Moragne* was earlier advocated by preeminent legal scholars of the present century. *See* Landis, *Statutes and the Sources of Law,* Harvard Legal Essays 213, 221–27 (1934); Pound, *The Common Law and Legislation,* 21 Harv.L.Rev. 383, 388 (1908) ("In other words, statutes are to be taken to be parts of the law for all purposes. The courts reason from them by analogy the same as from any other legal rules."); Stone, *The Common Law in the United States,* 50 Harv.L.Rev. 4, 12–16 (1936); *see also* H. Read, J. MacDonald, J. Fordham, & W. Pierce, *Materials on Legislation,* 43–48, 891–893 (4th ed. 1982); *see generally,* G. Calabresi, *A Common Law for the Age of Statutes* (1982).

the plaintiff was a New York citizen[21] when the action was filed and Joseph Krier's New York citizenship should be imputed to the Krier side of the defense.

## II.

The majority hold on to *Mecom* probably not because of affection, but, presumably, because of its ease in application. The rule of *Mecom* may, by permitting resort to a label, without plumbing to ascertain actuality, enjoy a certain ease of application. But once this Court decided to look to the citizenship of the real party in interest, we decided that reality rather than mere expediency should rule. This Circuit's case-by-case limitation of *Mecom* to its proper place in the jurisdictional world has raised many questions about the significance of representatives' citizenship and, in a sense, added complexity to the law.[22] But, until today, complexity has never caused this Court to retreat to *Mecom*'s "certain ground". Nor, in the instant case, does resort to reality breed great complexity.

The law grows, as children grow. As Heraclitus said, in a more classical language: "Nothing is but is becoming." A preeminent American jurisprudential expert has pointed out: "The life of the law has not been logic: it has been experience."

The rule that an executor's or administrator's citizenship controls for the purpose of determining diversity of citizenship was first enunciated in *Chappedelaine v. Dechenaux,* 8 U.S. (4 Cranch) 306, 2 L.Ed. 629 (U.S.1808). In *Chappedelaine,* the plaintiffs were citizens of France and the defendant was a citizen of *Georgia.* The defendant claimed that there was an absence of complete diversity because the plaintiffs were representatives of Georgia decedents. The defendant's counsel was stopped by Chief Justice Marshall when counsel opened the question of jurisdiction. The Chief Justice said:

> The present impression of the court is, that the case is clearly within the jurisdiction of the courts of the United States. The plaintiffs are aliens, and although they sue as trustees, yet they are entitled to sue in the circuit court.

*Id.* at 308, 2 L.Ed. 629. No reasoning or support was given for the statement. No reference was made to the predecessor of 28 U.S.C. § 1359. It could not have been, for the statute first saw the light of day over 60 years after *Chappedelaine* was decided. *See* Act of March 3, 1875, ch. 137, 18 Stat. 470, 472. The next time the issue was raised in the Supreme Court, Mr. Justice Story ruled that the executors in the case were the real parties in interest and their citizenship controlled. *Childress v. Emory,*

---

**21.** That Krier-Hawthorne is now a Virginia resident is of no consequence. Diversity jurisdiction is determined at the time the action is commenced. *Smith v. Sperling,* 354 U.S. 91, 93 n. 1, 77 S.Ct. 1112, 1113 n. 1, 1 L.Ed.2d 1205 (1957); *Louisville, N. & C.R. Co. v. Louisville Trust Co.,* 174 U.S. 552, 19 S.Ct. 817, 43 L.Ed. 1081 (1899).

**22.** This was recognized very soon after *Lester* was handed down. In testimony favoring legislative adoption of the American Law Institute's proposals with respect to federal court jurisdiction, *see* p. 671 *infra,* Chief Judge Haynsworth discussed *Lester.* He said, in part:

So that under the present rule it means that each case has to be looked at and this means the district court has to spend judicial time and effort and if the parties then do not like the result, they can appeal to the court of appeals and it will have to spend a great deal of judicial time and effort also in getting the answer to the preliminary question: Can we

hear this case or not. And this is a dreadful waste of time.

*Diversity Jurisdiction, Multi-Party Litigation, Choice of Law in the Federal Courts: Hearings on S. 1876 Before the Subcommittee on Improvements in Judicial Machinery of the Senate Committee on the Judiciary,* 92d Cong., 1st Sess. 162 (1971) (statement of Chief Judge Haynsworth). *See, also, Bass v. Texas Power & Light Co.,* 432 F.2d 763, 766–67 (5th Cir. 1970), *cert. denied,* 401 U.S. 975, 91 S.Ct. 1194, 28 L.Ed.2d 324 (1971); *Note,* 47 N.Y.U.L.Rev. 801, 813–14 (1972). The complexity engendered by *Lester* inspired the dissent in *Vaughan v. Southern Railway Co.,* 542 F.2d 641, 647 (4th Cir.1976) (Butzner, J., dissenting).

However, anyone exposed to judging as a regular diet or duty knows that the longing for simplicity is chimerical. Judging will always be abundantly complex, if not in the instant area then in numerous others clamoring for attention.

21 U.S. (8 Wheat) 642, 668–69, 5 L.Ed. 705 (1823).[23] The sum of Story's reasoning was: "The point was expressly adjudged in *Chappedelaine v. Dechenaux* (4 Cranch 306) [2 L.Ed. 629], and, indeed, has not been seriously pressed on the present occasion." *Id.* In *Coal Co. v. Blatchford,* 78 U.S. (11 Wall.) 172, 175, 20 L.Ed. 179 (1870), Mr. Justice Field said *Chappedelaine* and *Childress* were conclusive authority that the citizenship of a trustee controls for determining diversity.[24]

Then came *Mecom v. Fitzsimmons Drilling Co.,* 284 U.S. 183, 52 S.Ct. 84, 76 L.Ed. 233 (1931). In *Mecom* the Court held that an administrator who sued for the beneficiaries named in a wrongful death action was the real party in interest and his citizenship controlled for the purpose of defeating diversity. *Mecom's* holding was based on two different lines of reasoning. One, that it was settled that the citizenship of executors and administrators controlled. *Id.* at 186, 52 S.Ct. at 85, *citing, inter alia, Childress* and *Blatchford.* Two, that to rule otherwise would collaterally attack the decree appointing the party to be an administrator. *Id.* at 189, 52 S.Ct. at 87. This Court has expressly said that *Mecom's* second line of reasoning is an empty notion. *Miller,* 456 F.2d at 68. *Mecom's* first line is nothing more than a recital of decisions that ultimately depend on *Chappedelaine* and *Childress.* Again there was simply no allusion to the predecessor to 28 U.S.C. § 1359, because the result was dismissal for lack of jurisdiction because of the joinder.

**23.** Again, the case long antedated enactment in 1875 of the predecessor to 28 U.S.C. § 1359. Also, as previously indicated, the cases treat an executor, to some extent differently than they do an administrator, especially one appointed with achievement of diversity jurisdiction in mind.

**24.** Here the consequence was to dismiss for want of diversity jurisdiction because an identity of citizenship existed between one of the plaintiff trustees and the defendant. Hence, the result fully coincided with the objective of the predecessor to 28 U.S.C. § 1359 enacted five years later.

Over and beyond the consideration that *Mecom* simply is not relevant where a personal representative's citizenship is invoked to obtain jurisdiction, thus contravening 28 U.S.C. § 1359, *Chappedelaine,* suffers from a lack of any reasonable support. Its rule is nothing more than a blind repetition of an extemporaneous statement by Chief Justice Marshall. *Childress* has no reasoning worthy of the name, but Justice Story did use the term "real parties in interest." *Childress,* 21 U.S. (8 Wheat) at 668, 5 L.Ed. 705. At the time Story used the term "real parties in interest," it signified merely that the persons had a right, granted by the substantive law of the case, to sue and control the action. *See* Clark & Hutchins, *supra,* note 6, at 259–60; Simes, *supra,* note 6, at 61. Today, we interpret the term differently. *See Lester,* 415 F.2d at 1105–06.

When Marshall and Story came up with the rule that an executor's or administrator's citizenship controls for diversity purposes, it was not possible to bring a tort action based on personal injury on behalf of or against a decedent's estate.[25] The law has nearly completed a centuries-long journey from a point at which death closed off most causes of action to a point where death does not cause abatement. In almost all cases where there is a decedent's executor or administrator as a party, the controversy will have arisen before or at the time of the decedent's death. One pair of commentators has asked: "Should federal jurisdiction thus depend on the fortuitous circumstance that one party to the controversy happened to die before the controversy reached the litigation stage?" [26] Their an-

**25.** Suit by and against executors for debt was authorized as early as the reign of Edward I. *See* 3 W. Holdsworth, *A History of English Law* 573 (5th ed. 1942); 2 F. Pollock & F. Maitland, *The History of English Law* 347–48 (2d ed. 1898). However, suits by and against executors for torts based on personal injuries were not allowed until the late nineteenth and early twentieth centuries. *See* W. Prosser, *Handbook of the Law of Torts* 898–901 (4th ed. 1971). Virginia now, however, allows all causes of action to survive the death of either party. *See* Va.Code § 8.01–25.

**26.** Cohan & Tate, *Manufacturing Federal Diversity Jurisdiction By The Appointment of Repre-*

swer is, and the answer of the Court should be: "No."

The American Law Institute has proposed that:

> An executor, or an administrator, or any person representing the estate of a decedent or appointed pursuant to statute with authority to bring an action because of the death of a decedent shall be deemed to be a citizen only of the same State as the decedent; and a guardian, committee, or other like representative of an infant or incompetent shall be deemed to be a citizen only of the same State as the person represented.

American Law Institute, *Study of the Division of Jurisdiction Between State and Federal Courts* § 1301(b)(4) (1969). The majority in the present case acknowledges that the ALI proposal is the ideal solution to the problem facing us.[27] It feels, however, that we must wait for Congress to enact the ALI proposal.[28] In *Messer* we said:

> Without intimating that we should or can effect the change simply by judicial pronouncement, we, nevertheless want it known that, if a case arises which presents the question [of whose citizenship controls] in a way that its answer will affect the outcome, we shall expect the issue of applicability of the A.L.I. proposal to be raised and fully presented.

*Messer*, 612 F.2d at 1375 n. 11. The parties in the present case did not raise the issue.

With that fair notice to counsel, however, it is appropriate to do so, *sua sponte.*

The doctrine that the executor's or administrator's citizenship controls is a judge-made doctrine. In *Surratt v. Thompson,* 212 Va. 191, 193, 183 S.E.2d 200, 202 (1971), the very case that allowed suits against spouses, such as the present case, to proceed in Virginia, the court said: "former rules should give way to rules of reason in the light of changed circumstances." The courts can and should change outmoded, judge-made rules to conform to present reality.[29] This should be especially true with respect to jurisdictional doctrines.[30]

The doctrine that the citizenship of a decedent's personal representative should control for the purpose of establishing diversity of citizenship is based on outmoded concepts of the real party in interest and was established before the present non-effect of a decedent's death upon causes of action had fully evolved. Even if the doctrine were correct when it was summarily adopted by judicial ukase in 1808, it should, if it indeed reaches the present case, be abandoned today.[31]

The reasons underlying the creation and maintenance of diversity jurisdiction are disputed.[32] The traditional, and most widely stated, theory is that diversity jurisdiction was established to protect outsiders

---

*sentatives: Its Legality and Propriety,* 1 Vill.L. Rev. 201, 214 (1956).

**27.** *See also, Vaughan,* 542 F.2d at 647 n. 4.

**28.** The majority is not alone on the point. *See White v. Lee Marine Corp.,* 434 F.2d 1096, 1099 n. 8 (5th Cir.1970); *Lester v. McFaddon,* 415 F.2d 1101, 1106 (4th Cir.1969); *Bugbee v. Donahue,* 483 F.Supp. 1328, 1330 (E.D.Wis.1980) ("until that proposal becomes law, it remains only a proposal"); *Herrick v. Pioneer Gas Products Co.,* 429 F.Supp. 80, 84 (W.D.Okl. 1976).

**29.** For an excellent disquisition on the proposition see the opinion of Chief Justice Arthur T. Vanderbilt in *State v. Culver,* 23 N.J. 495, 505–507, 129 A.2d 715, 721–22 (1957), *cert. denied,* 354 U.S. 925, 77 S.Ct. 1387, 1 L.Ed.2d 1441 (1957) (citing, *inter alia,* Cardozo, Coke, Holds-

worth, Holmes, Pound, and Williston). *See also* G. Calabresi, *A Common Law for the Age of Statutes* (1982).

**30.** *See, e.g., Shaffer v. Heitner,* 433 U.S. 186, 205–206, 208, 97 S.Ct. 2569, 2580–2581, 2582, 53 L.Ed.2d 683 (1977) (the Court questioned requirements for *quasi in rem* jurisdiction in light of changes in the law and subsequently held that the standard of *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), governed actions *in rem* as well as *in personam* ).

**31.** For reasons advanced in Section I binding precedent properly applied precludes it from so extending.

**32.** *See, e.g.,* American Law Institute, *Study of the Division of Jurisdiction Between State and Federal Courts* 101 (1969).

from prejudice.[33] When a state court or jury is faced with a dispute involving a dead person, the court or jury will most likely base its prejudices, if any, on the identities of the actual actors in the disputed event or transaction, not the identities of the persons supervising the litigation of the dispute, especially purely formal ones with no real interest in the outcome. Thus, the traditional purpose behind diversity jurisdiction would best be served by the ALI proposal. It suggests evolution and growth, not abrupt change. Thus, I would judicially adopt the substance of the ALI Study's § 1301(b)(4).

### III.

For the reasons stated above, I dissent.

---

**33.** American Law Institute, *supra,* note 22, at 101. *See also Bank of the United States v. Deveaux,* 9 U.S. (5 Cranch) 61, 87–88, 3 L.Ed. 38 (1809).

